Citizens Coach Co. *v.* Camden Horse R. R. Co.

The Citizens Coach Company, appellant,

and

The Camden Horse Railroad Company, respondent.

1. A preliminary injunction is never granted unless the act threatened to be done will inflict an irreparable injury on the complainant.

2. Nor will the writ be issued where the right of the complainant depends on an unsettled question of law.

3. Also, it is the general rule that when the equity of the complainant is disproved by the answer and affidavits, a preliminary injunction is not proper.

On appeal from an order of the chancellor granting a preliminary injunction. His opinion is reported in *Camden Horse R. R. Co.* v. *Citizens Coach Co.*, 1 *Stew.* 145.

*Mr. Alden C. Scovel* and *Mr. George M. Robeson,* for appellant.

*Mr. David J. Pancoast,* for respondent.

The respondent in this court, being the complainant in the court of chancery, is an incorporated company, owning and operating a horse railroad in the city of Camden, and in its bill the ground of its complaint was, that the appellant, that was also incorporated and was carrying on in said city the business of transporting passengers and goods, unlawfully in that pursuit used and obstructed the road of the complainant. The various charges to this effect are in the words following, viz.:

" And that the said Citizens Coach Company, in the pursuit of its said business, continually drives its said coaches in, through and along the same streets upon which the roads of your orators are built, maintained and used as aforesaid. And that the said Citizens Coach Company continually use the road and track of your orator, in and upon said streets, for the purpose of its said business, by driving its said

coaches upon and along its said roads and rails, to the great damage of the same, and against the wishes and the express request of your orator. And your orator further shows, that the said Citizens Coach Company, by so doing, is greatly injuring and destroying the roads and tracks and property of your said orator. And your orator further shows, that the said Citizens Coach Company greatly and unnecessarily annoy, vex, hinder and obstruct your orator in the lawful use and exercise of your orator's said property and franchises, by purposely driving its coaches upon and along your orator's said road and tracks in front of your orator's cars, and stopping thereon to take in, receive and deliver and discharge passengers and baggage, and thereby greatly impeding the progress of your orator's said cars upon the said roads and tracks, and injuring its said business."

The prayer of the bill asked for an answer and an injunction, and for the following relief:

" And that the said Citizens Coach Company may, by the order and decree of this honorable court, be restrained from using, with its coaches, in the pursuit of its business of carrying passengers in and about the city of Camden, the railroads of your orator in the said city."

There was no general prayer.

The bill was verified and substantiated by this affidavit alone:

" Camden county, *ss.*—Isaac N. Price, being duly sworn, on his oath says—that he is a conductor of a street car in the employ of the Camden Horse Railroad Company; that said company has constructed railroads on the principal streets in the city of Camden, and uses them with street cars, in the business of carrying passengers in and about the said city; that the said streets are about sixty feet in width, and that the tracks of the said company's roads are five feet and a half an inch apart, and are so laid as not to interfere with the use of said streets by the public for traveling or other purposes; that the Citizens Coach Company of Camden has lately organized and commenced the same business on the same streets upon which the Camden Horse Railroad Company has its railroads and runs its cars; and that the said coach company continually uses the roads and tracks of the Camden Horse Railroad Company by driving its coaches upon and along the same, in the pursuits of its said business; and that the said coaches are often driven upon and along the tracks of the said railroads, immediately in front of said cars, where they often stop to take in, receive, and let out and discharge passengers, with their baggage, and thereby

delay and hinder the cars of the said company, and obstruct it in the use of its roads."

The answer of the defendant contained the following denials of the wrongs thus charged :

"And this defendant, further answering, denies that the coaches of this defendant are made so as to fit and run upon the road and rails of said complainant; and also denies that the said defendant, in the pursuit of its said business, continually drives its said coaches in, through and along the same streets upon which the roads of complainant are built, except as hereinafter stated.

"And this defendant, further answering, denies that it continually uses the road and tracks of the complainant, in and upon the streets where the same are built, for the purpose of its said business, by driving its said coaches upon and along the said roads and rails, to the great damage of the same ; and this defendant denies that it is in any way injuring and destroying the road and tracks and property of the complainant.

"And this defendant, further answering, denies that it impedes the progress of the complainant's cars upon its said road and tracks, or injures its said business, or annoys, hinders or obstructs the complainant in the lawful use and exercise of its said property and franchises, by purposely driving its said coaches upon and along its said road and tracks in front of its cars, and stopping therein to take in, receive and deliver and discharge baggage.

"And this defendant, further answering, admits that the rails or tracks of the said complainant are the private property of complainant, but denies that it is entitled to the exclusive use and enjoyment of the same as against this defendant and all other persons seeking to use the same in the business of transporting passengers from one point to another in the city of Camden.

"And this defendant, further answering, says and states that it does not and never has driven its coaches upon and along that part of complainant's rails called the flange, and upon which complainant runs its cars, but that it has occasionally (not regularly), when not occupied by complainant's cars, or the wagons or vehicles of others, driven its coaches upon that part of the rail used by the public and called the tramway, and that portion of the street between the said rails of said complainant, and in no other way has or does this defendant use the rails or roads of said complainant, except in crossing the rails when turning out or in crossing the streets.

"And this defendant, further answering, states and says that through its president or officers, at the time of commencing business, it notified

the several drivers of its coaches that they must in no way interfere with, hinder or obstruct the complainant in the use of its rails, road or tracks."

This answer was verified and substantiated by the oath of the president of the company, and by the following affidavit:

"State of New Jersey, Camden county, *ss.*—John H. Githens, Jacob B. West, Andrew R. Ackley, Samuel I. Fenner, Thomas Jackson, Jr., Napoleon B. Thompson, William H. Simpson, Joseph Cline, Joseph F. Horner, Elwood L. Griscom, William Lee, William H. Garwood and William R. Hendricks, being severally sworn, on their respective oaths say—that they are all the drivers employed by the Citizens Coach Company, the defendant named in the foregoing bill of complaint of the Camden Horse Railroad Company, and that they and each of them were notified by the officers of said company, before they commenced to drive the coaches of said company, not to interfere with or obstruct the complainant in the use of its roads and tracks, and that they have not and do not interfere with or obstruct it in the use of its said roads and tracks; and further, that the said company does not continually use the roads and tracks of the said complainant, by driving its coaches upon and along the same, in the pursuit of its business, and that the said coaches of said company are not driven upon and along the tracks of the said railroad of said complainant, immediately in front of its cars, and do not stop to take in and let out and discharge passengers, with their baggage, in such way or manner as to delay and hinder the cars of the said complainant, and obstruct it in the use of its roads."

A rule to show cause why an injunction should not be granted having been made, on the hearing of that rule, on the pleadings and proofs above stated, an injunction was ordered restraining the coach company from using with its coaches, " in the pursuit of its business of conveying passengers in and about the city of Camden, the railroads of the said Camden Horse Railroad, except as it may incidentally use the same in traveling on and using the street, until," &c.

This appeal was from this order.

The Chief Justice.

Upon looking into this case my conclusion is, that this injunction cannot be sustained without a plain and direct

Citizens Coach Co. *v.* Camden Horse R. R. Co.

infringement of each of the three following legal rules belonging to this subject, and which rules are of paramount importance, and have been established by a series of adjudications in this state :

First :   It is entirely settled that a preliminary injunction will never be ordered unless from the pressure of an urgent necessity.   The damage threatened to be done, and which it is legitimate to prevent, during the pendency of the suit, must be, in an equitable point of view, of an irreparable character.   Such is the clear language and mandate of the cases from the earliest to the latest.   As long ago as the year 1829 (*Hal. Dig.* 532), Chancellor Williamson, the elder, thus defined the practice :   " An injunction ought not to be allowed in all cases of trespass, nor to protect persons in the enjoyment of every right.   The court always, to restrain a trespasser, expects a strong case of destruction, or irreparable mischief to be made out, or that the trespass should have continued so long as to become a nuisance.   A perseverance in committing acts of trespass is not sufficient."   And in the leading case of *Bonaparte* v. *Camden and Amboy R. R. Co.*, *Bald. C. C.* 205, 217, the cautionary words of Judge Baldwin are equally emphatic against a too frequent resort to this writ.   He says : " There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of equity that never ought to be extended unless in *cases of great injury*, where the courts of law cannot afford an adequate or commensurate remedy in damages."

The rule thus declared at this remote period has never, so far as I can discover, been questioned or abridged by any of the courts of this state when the matter has been presented for consideration.   I shall not attempt to trace its history as illustrated by our judicial records; the labor would be useless, as it is certainly sufficient, in order to show the persistence of the rule, to refer to the language of this court in the case of *Att'y-Gen.* v. *The City of Paterson*, reported

in 1 *Stock.* 624. A preliminary injunction had been refused by Chancellor Williamson in that case, and the course thus taken was approved of in this court, on the ground, in the language of the opinion then read, that, upon the case before the chancellor, "in the bill, answer and affidavits, no case of *threatening, irreparable mischief* is made out. That was the only question he had to decide upon the motion for a preliminary injunction, in advance of the hearing of the cause, and before the case was in a situation to be decided on the merits. Where it does not appear that irreparable mischief is liable to ensue from leaving a party to go on exercising a right he claims, the court never stops him before it has an opportunity of examining the question of right. To do so would be unnecessarily to prejudge the case before a full hearing on its merits—and so are the authorities."

The rule to be applied at the present time, I think, therefore, is extremely clear; and it seems to me equally clear, that it is only by its utter repudiation that the present injunction can be continued. To call the inconvenience or vexation to which the respondent may be subjected, if the entire statements in his bill are true, by a continuance of them during the pendency of this suit, "an irreparable mischief," would be mere hyperbole; at the most, there might be a slight wearing out of the rails of its road, and an occasional momentary stopping of its cars. The case made by this bill, in my judgment, falls greatly short of those extreme misfeasances which it is the province of a court of equity to arrest *in limine.* The rule and the injunction cannot both be upheld, and, consequently, as I think, the latter must be annulled.

In the second place: No rule of equity is better settled than the doctrine that a complainant is not in a position to ask for a preliminary injunction when the right on which he founds his claim is, as a matter of law, unsettled. In the case of *Stevens* v. *Paterson and Newark R. R. Co.,* 5 *C. E. Gr.* 126, this principle is expressed in these words, viz.: "An

injunction will not issue where the right of the complainant, which it is designed to protect, depends upon a disputed question of law, about which there may be a doubt, which has not been settled by the courts of law of this state."

Now, I must think that no case can be imagined to which this rule is more directly applicable than to the one now before this court. The respondent, in its bill, claims to have the exclusive right not only to run cars upon the road it has laid in the streets of Camden, and not only the added right of having such track clear at all times for its use, but also the right of excluding ordinary vehicles from it that are used in a competing business, although such secondary use does not interfere with its own primary use. But this is a mere claim, made by the complainant, which has not, as yet, any support in any decision made by any judicial tribunal in this state. Such claims have been repudiated by courts elsewhere, whose decisions are entitled to the utmost consideration. It is obvious that, with us, the question thus raised is a purely novel one, and one of great delicacy and importance, for which, on the one hand, the respondent is to be secured in the enjoyment of the privileges conferred by its charter; on the other hand, it is equally imperative upon the courts to jealously guard against every unauthorized diminution of the rights of the public. Such a claim cannot be assumed or decided in favor of a complainant on a motion for a preliminary injunction; for, by so doing, the case is first decided, and, afterwards, when the proofs are in, heard in its final stage. The rule referred to above is designed to prohibit such a course of proceeding, and this rule has been, in my opinion, clearly infringed in this case.

In the third place: When this order for this injunction was made, every fact that created an equity in favor of the complainant was denied by the answer and proofs of the defendant. The order for the injunction was made on a rule to show cause, and, on this rule, the answer and accompanying affidavits were used by the appellants. The answer was that of a corporation, and was under the corporate seal,

and, therefore, was of no consequence on the motion referred to, except as it was explanatory of the meaning of the affidavits. Under such circumstances, it was the sworn statements that were to be regarded, and it was upon them that the result of the motion should have been made to depend. These sworn statements, as I have said, denied, as directly and emphatically as it was possible, every material allegation on which, in the bill, the prayer for an injunction rested.

The general rule, subject to but a few exceptions, is, that if the facts constituting the claim of the complainant for the immediate interposition of the court are contraverted, under oath, by the defendant, the court will not interfere at the initial stage of the cause. This case plainly falls within the scope of this general rule, and it seems to me that, on this ground, also, this injunction should be dissolved.

I shall vote to reverse the order for that writ.

DALRIMPLE, J.

On the ground that the charges in the complainant's bill are fully met by the defendant's answer and affidavits, I vote to reverse the order for preliminary injunction.

For affirmance—CLEMENT, LILLY—2.

For reversal—BEASLEY, C. J., DALRIMPLE, DIXON, REED, WOODHULL, DODD, GREEN, WALES—8.