This is a suit for a preliminary injunction by one Benjamin F. Messler against Charles P. Gillen, director in charge of the Centre market in Newark.
It appears that Messler and his father have conducted a business in the Centre market in Newark continuously since 1865. On January 27th, 1921, John F. Monahan, then director, issued a permit to Messler and one Herbst. It is to be noted that this permit provides for revocation by the director of parks and public property, but does not say how or when or in what manner. The inference, therefore, would be that this right should be exercised in a reasonable manner. The permit is in the following language: *Page 124 
"Said Ben J. Messler and C.A. Herbst, stipulating and agreeing in the use and occupancy of the said stand, to be governed by and obey the ordinances, rules and regulations now established or hereafter established for the governance, inspection, regulation and management of the public markets. This permit is revocable by the director of parks and public property. The above stand is to be occupied only as a stand for the retail sale of fruit and vegetables and country products.
This permit is personal and not transferrable.
 JOHN F. MONAHAN. Attest:
 CHARLES LAMMERMEIER, Market Clerk."
Before that time the stands were occupied by virtue of permits issued by the various authorities who, from 1865 until the adoption of the Walsh act, had control of the market. The rental has always been regularly paid as demanded by the city authorities.
There is some dispute in the pleadings as to whether or not a permit of later date than the one signed by John F. Monahan was or was not given to Messler, but in the briefs it is admitted that no new licenses or permits were tendered to the complainants.
In 1924 Mr. Gillen promulgated certain rules and regulations governing the market, which rules are in printed form and are endorsed "Effective April 1st, 1924." A copy of these rules was given to the complainants some time in the spring of 1925. One of the rules reads as follows: "The director may terminate a permit at the end of any month upon thirty days' notice of his intention so to do to the lessee."
Thereafter, on August 31st, 1925, the director served the following notice on Mr. Messler.
"In accordance with regulation 3, section 8 of the rules and regulations of the department of parks and public property for the operation and control of Centre market, you are hereby notified that your permit to do business in the Centre market will terminate October 1st, 1925."
No reasons for this were given, and when an attempt was made by Mr. Messler to find out what reason, if any, caused *Page 125 
this notice, no information was vouchsafed. The complainants secured a rule to show cause, with temporary restraint, and are now asking for a preliminary injunction restraining the director from ejecting this man from his stall in the market until after a final hearing in this case.
I am aware of the rules as laid down by our courts as to the granting of preliminary injunctions. They are best epitomized in the Citizens Coach Co. v. Camden Horse Railroad Co., 29 N.J. Eq. 299.
The first proposition is that "a preliminary injunction is never granted unless the act threatened to be done will inflict an irreparable injury on the complainant." It seems quite obvious that, if this man is forced to give up a business that he and his family have conducted since 1865, he will be deprived of the good-will attaching to this stand, and his business will be practically ruined; whereas, it is no hardship upon the city of Newark to allow him to remain until a final conclusion can be had in this matter.
The second rule in the above-stated case is: "Nor will the writ be issued where the right of the complainant depends on an unsettled question of law." The question of law involved in this case, in my opinion, is this: Is or is not this rule or regulation, assuming that it was properly and legally passed under proper authority, reasonable or unreasonable? Our courts have held in cases too numerous to cite that regulations of this kind must be reasonable. Is it reasonable to place in the hands of one single man the arbitrary right to choose whom he shall allow to have stands in the Centre market, and whom he shall, in his absolute discretion, declare shall no longer earn their living there? There is no doubt that the city has the right to properly and reasonably control the Centre market and the occupants of the stalls, but it is a grave question as to whether an arbitrary action of this kind is within the power of the director.
At all events, the legal principle is so clearly involved that, in my opinion, the facts of this case should be considered, and that principle applied to them without in the meantime disturbing the present status quo. *Page 126 
All the facts that I have recited are admitted, so the third rule in the Citizens Coach Case, supra, to wit, "when the equity of the complainant is disproved by the answer and affidavits, a preliminary injunction is not proper," does not, in my opinion, apply.
Counsel for the complainant has also submitted affidavits showing that in several cases, at least, leases have been granted in the market — not licenses or permits — which leases contain no reference to these rules, and give no authority to the lessor to serve a thirty-day notice to vacate.
This raises another legal question as to whether or not the control of this market has been conducted in a discriminatory manner — that is, certain rules prepared for some stallholders and other conditions imposed on other stallholders.
I shall, therefore, for the reasons stated above, advise a decree continuing the preliminary injunction until final hearing.