This matter is before the court on an order to show cause why a preliminary injunction should not issue to restrain the defendants and their contractors from demolishing a wall which is alleged to support an extension of building on the westerly line of complainant's property, and from trespassing upon or removing any structures from complainant's land, pending the final hearing of the cause of action stated in the complainant's bill. The mayor and aldermen of Jersey City have been improperly joined as a party defendant. The Trustees of the Free Public Library of Jersey City (a body corporate) is the proper defendant in the cause. It appears from the bill of complaint, affidavits filed in behalf of the respective parties, and the argument of counsel, that The Trustees of the Free Public Library of Jersey City acquired land fronting on Montgomery street, adjoining the main free public library building fronting on Jersey avenue, Jersey City, for the purpose of erecting thereon an addition to such main library building. The property acquired by the defendant is known as 282 Montgomery street, and upon it is an old three-story brick dwelling house with a basement and cellar. To the rear of said dwelling house is an extension of about twenty feet in depth. The complainant's property is known as 284 Montgomery street, and upon it is a three-story brownstone dwelling house with a cellar. To the rear of complainant's dwelling house is a wooden extension of about twelve feet in depth erected on a brick foundation. The easterly wall of the main building of the premises 282 Montgomery street is twelve inches in thickness. The westerly wall of the premises 284 Montgomery street is eight inches in thickness. Both of said walls are separate and distinct and do not depend upon each other for support. The easterly *Page 215 
wall of the extension to the premises 282 Montgomery street, to the extent of the depth of the extension to the premises 284 Montgomery street, is alleged to have been used since its erection, more than twenty years ago, as a support and bearing for the extension to the complainant's main building, which extension, on the westerly side thereof, has no independent wall. The main building of the property so recently acquired by the defendant is alleged to encroach about twenty-two one-hundredths of a foot on the building line of the complainant's property in the front, and about fourteen one-hundredths of a foot at the rear of the main building situate on the premises 282 Montgomery street, and about sixteen one-hundredths of a foot at the rear of such extension. The complainant alleges that the defendant, in its proposed building operations, contemplates the demolition of the building on the premises 282 Montgomery street, and that work of demolition has already proceeded to the extent that the roof of the extension to the main building on said premises has been removed; that upon such extension being completely demolished the westerly side of the extension to complainant's main building (to which extension she has no westerly separate wall of her own) will be exposed to the elements. She alleges also that the demolition of the buildings on the premises 282 Montgomery street, and the erection thereon by the defendant of its proposed new structure, which will extend below the level of the foundation walls of the complainant's property, will result in irreparable damage to, and continued trespasses upon, her property; also, that the new building which the defendant contemplates erecting upon the premises 282 Montgomery street will encroach upon her property.
In my consideration of the affidavits filed in behalf of the respective parties I was impressed more strongly by the affidavits filed in behalf of the defendant, which, in my judgment, are more weighty than the affidavits relied upon by the complainant. The defendant's affiants appear to be expert in their particular lines of business. The affidavit of Albert S. Gottlieb, the architect in charge of the defendant's proposed work, is supported and verified by the affidavit of William Robertson, Sr., a general contractor and licensed structural *Page 216 
engineer, engaged in the general contracting and engineering business in Jersey City for the past thirty-five years in the construction of many large school buildings, institutional buildings, office buildings and fine residences; also by the affidavit of William Robertson, Jr., a graduate of Stevens Institute of Technology with the degree of mechanical engineer, who is also a registered architect and licensed structural engineer, and who is the general superintendent of William Robertson Son, Incorporated, the corporation employed by the defendant for its proposed work. Said affiant appears to have been engaged for the past seven years in general contracting work and has become familiar with the construction of large public school buildings, institutional buildings, office buildings and fine residences in Jersey City and elsewhere, and has had supervision of the construction and engineering work of many such buildings for and in behalf of said corporation. I mention said affiants particularly in contrast with the affiants supporting the complainant's claim for the reason that I am particularly impressed with the evidential value of their affidavits, as against the evidential value of the complainant's affidavits. It appears from the defendants' said affidavits that its plans and specifications, as revised, provide for and require the taking down and demolishing in its entirety the easterly wall of the main building on the premises 282 Montgomery street, but that the easterly wall of the extension to such building, for the entire height and depth of the extension to complainant's main building, will remain as it is and be incorporated into the new easterly wall of the addition to and alteration of the defendant's main library building; that such new easterly wall is to be sixteen inches in thickness above grade and twenty inches in thickness below grade; that during the course of construction the westerly wall of the complainant's main building and of the extension thereto will be underpinned to the depth of the new footings of the main library building addition for a distance of about four feet, and that all underpinning will be done in fourfoot sections, avoiding the necessity of needles or any other encroachments on the complainant's property; that such new easterly wall of the defendant's main library building *Page 217 
addition will replace the easterly wall of the main building now on the premises 282 Montgomery street from the rear of the latter building to Montgomery street, and will be erected on the true property line of the defendant's premises No. 282 Montgomery street, thereby removing the encroachment alleged by the complainant; that a wall enclosing the west side of the front areaway of the premises 284 Montgomery street will be built of concrete, on which will be fastened an ornamental iron railing about seven feet high; that test borings have been made which indicate that the soil of the premises 282 Montgomery street is safe for the loads to be imposed on it, and the bottom of the footings will be above the high-water level mark; that the westerly wall of the complainant's main building — an eight-inch brick wall laid in lime mortar — will be protected against the elements on the exterior during the course of construction of the addition to the defendant's main library building; that such revised plans and specifications also provide for and require, with the consent and permission of the complainant, the further protection of the westerly wall of the complainant's main building by filling in the space left between the easterly wall of the defendant's main library building addition, when constructed, by means of a granite ashlar on the Montgomery street front and by roof flashing throughout the length of the complainant's main building at the roof line; that the present chimneys of the westerly wall of the complainant's main building will, if complainant permits, be carried up to the height of the new parapet wall of the main library building addition; that during the course of construction of such addition a board fence will be placed on the Montgomery street side to prevent any inconvenience to adjoining property owners; that said revised specifications provide also that the contractor shall do all necessary bracing, shoring or needling to hold and secure the adjoining houses on each street, or wherever required, removing same after all has been made safe; that any injury or damage to adjoining property or buildings must be repaired by the contractor, and for the repair of which the contractor is made responsible; that where underpinning of adjoining houses is found necessary, *Page 218 
the contractor must level up carefully for new footings of concrete of proper sections for the walls they are to support, and such footings are to be put in at the same level as the adjoining footings for the addition to the main library building; that the cellar floors of adjoining houses are approximately eight feet below sidewalk level, and walls must be carried down to the level of the new footing; that said revised specifications further provide that the walls above the footings will be underpinned with first-class brick work, or concrete, four inches thicker than the present walls, laid in a very competent and skillful manner, as indicated by said specifications.
The specifications provide particularly for the safe-guarding of adjoining property and the repair of such damage, if any, as may be done thereto. It is clearly indicated by said affidavits that the taking down or demolishing of the easterly wall of the main building on the premises 282 Montgomery street in the manner contemplated and permitting the easterly wall of the extension to such building to the extent of the extension to the complainant's building to remain as it is, and continue to use same for a bearing and support as a westerly wall for the complainant's building, and incorporating such extension wall in the new easterly wall of the addition to the main library building, as contemplated, and during the course of taking down and demolishing the easterly wall of the main building on the premises 282 Montgomery street and the erecting of the new easterly wall of the addition to the defendant's main library building, bracing, shoring and underpinning the westerly wall for the complainant's main building in the way and manner contemplated by the defendant's revised specifications and as indicated by the defendant's affidavits, will not disturb the complainant's building, nor will any settling result therefrom.
I am of the opinion that the preliminary injunction prayed for by the complainant should not be granted. It appears to me that the complainant manifests unreasonable apprehension that her property rights will be violated. I am not in accord therewith, nor am I in accord with the complainant's apprehension or claim that she will suffer irreparable *Page 219 
damage, or disturbance to her property, as alleged in her behalf. Upon the argument of the matter sub judice the solicitor for the defendant stated that the defendant and its contractors would not, in the performance of the contemplated work, trespass upon the complainant's property, without her consent, nor demolish the alleged supporting wall between the extension of the building on the premises 282 Montgomery street and the extension to the complainant's building on the premises 284 Montgomery street. It is true, as urged by the solicitor for the complainant, that where a party is given an easement in a party wall by prescription, or otherwise, the adjoining landowner has no right to destroy or remove such wall, or to so deal with it as to render it insufficient for the support of the former's building, or to impair his easement therein, without his consent; but I do not appreciate that such is the case sub judice. For the defendant to erect the contemplated new easterly wall of the addition to the main library building upon the true property line of the premises 282 Montgomery street, and to incorporate therein the easterly wall of the extension thereto to the height and depth of the extension to the complainant's building will not, in my judgment, impose any burden or encumbrance upon the complainant's building, but will, in fact, further support and sustain what is now the defendant's easterly wall adjoining such extension. The defendant, in my judgment, should be permitted to demolish such portion of the easterly wall of the building on the premises 282 Montgomery street as it may deem advisable to enable it to remove the alleged existing encroachment of said building upon the complainant's land, particularly if, as I view the fact to be, no physical damage or injury will be thereby caused to the complainant's building or property. The defendant appreciates, as indicated by its solicitor upon the argument of the matter sub judice, that an absolute duty is imposed upon the defendant, in excavating more than eight feet in depth on its own land, to support and preserve the building of the complainant on the adjoining land, if afforded a necessary license to enter thereon for such purpose. See Hirschberg v. Flusser, 91 N. *Page 220 J. Law 66; affirmed, 92 N.J. Law 515; see, also, 3 Comp. Stat.p. 3926.
Courts of equity do not ordinarily restrain, by injunction, and particularly by interlocutory injunction, the commission of a mere trespass; there must be some great vexation from continued trespasses, or some irreparable mischief, which cannot be easily measured by money damages, to authorize interference by injunction. De Veney v. Gallagher, 20 N.J. Eq. 34. The defendant, under our law, is liable in damages for active wrong-doing. Kehoe v. Rutherford, 74 N.J. Law 659; Dohrman v.Freeholders of Hudson, 84 N.J. Law 689.
In deciding an application for preliminary injunction the court will generally be governed by considerations of the relative convenience or inconvenience which may result to the parties from granting or withholding the writ, and where, upon balancing such considerations, it is apparent that the act complained of is not likely to result in irreparable injury to the complainant, and the balance of inconvenience preponderates in favor of the defendant, the injunction ought not be granted. In High Inj.
(4th ed.) § 13, the author says:
"Indeed, the consideration of relative convenience and inconvenience to the parties is one of the principal guides which govern courts of equity in the matter of granting or withholding relief by interlocutory injunction."
The granting to the complainant of the injunction sought by her, in limine, would be tantamount to a determination of the merits of the case sub judice as on final hearing. The merits of the matter in question should, in my judgment, be determined on final hearing, and not in limine. I do not appreciate that the contemplated building operations of the defendant will destroy the character of the structure which is said by the complainant to be a party wall, as such. Whether the complainant is entitled, by virtue of an easement acquired through use by a lapse of years — equivalent to a right by prescription, to the use of the wall in controversy, is a question of fact to be determined upon the final *Page 221 
hearing, if this court be vested with jurisdiction to determine such question, or, in a court of law, if the parties be relegated thereto — for it has been held that a substantial dispute over a legal right in land is not ordinarily cognizable in a court of equity, though many cases arise in which courts of equity may, by decree and injunction, protect and enforce legal rights in real estate. Hart v. Leonard, 42 N.J. Eq. 416.
I am of the opinion that the facts in the case sub judice, as manifested by the bill of complaint and affidavits, and the rules of law applicable thereto, are not so clear as to warrant granting to the complainant a preliminary injunction as sought by her. The Citizens Coach Co. v. Camden H.R.R. Co., 29 N.J. Eq. 299.
I will advise an order discharging the order to show cause, with ad interim restraint, heretofore granted.