This matter comes before me on the return of an order to show cause why ad interim restraint should not be granted pending final hearing on the merits of the bill of complaint filed by complainants against defendants.
The bill of complaint sets forth that on January 16th, 1939, a collision occurred between a motor bus operated and driven by Public Service Interstate Transportation Company, hereinafter called Interstate, and an automobile driven and operated by one Mimnaugh, as a result of which Mimnaugh was killed and Reba Sharpless and Linda Peters, passengers for hire in the bus, were injured. Separate suits were instituted by Peters and Sharpless and by Mimnaugh's administrator ad prosequendum against Public Service Co-ordinated Transport, hereinafter called Co-ordinated, based on allegations of negligence in the operation of the bus aforesaid.
The suits of Peters and Sharpless were instituted January 30th, 1939, and that of Mimnaugh in February of 1939, all in the New Jersey Supreme Court. The Peters and Sharpless suits were prosecuted to the point where a demand for a bill of particulars was made by the defendants in each case, after which there were no further proceedings, plaintiffs never having complied with the demand.
The Mimnaugh case was brought to issue and listed for trial at the October, 1939, term of the Supreme Court of Atlantic County, and at subsequent terms, and was finally listed for trial at the May, 1942, term of said court, at which time the bill alleges the attorney for complainants therein was advised that suit should have been instituted against Interstate and not Co-ordinated, the former having been the owner and operator of the bus with which the Mimnaugh *Page 502 
car collided and in which said Peters and Sharpless were passengers for hire.
After discovery by complainants of the misnomer aforesaid, plaintiffs' attorney applied before a Justice of the Supreme Court for leave to amend the summons and complaint in each one of the cases, so as to substitute Interstate as defendant in the place and stead of Co-ordinated; the application was denied, whereupon complainants' attorney, in August of 1942, instituted three new suits for the complainants against Interstate; thereafter, in September of 1942, counsel for Interstate served notice of a motion to quash and dismiss the summons in the Mimnaugh suit and to strike out the first count of the complaint on the ground that the suit was not commenced within two years after the death of Mimnaugh.
Counsel for defendants filed answers in the new Peters and Sharpless suits setting up that the cause of action was barred by the statute of limitations.
Complainants seek at this time a restraining order against the defendants enjoining them from proceeding with the motion to dismiss and strike in the Mimnaugh case and from setting up the bar of the statute by way of answer in the passenger cases, until the further order of the court, to the end that a final hearing may be had and a decree entered thereon.
Complainants allege that defendants' wrongful conduct has resulted in subjecting their suits at law to the bar of the statute in such case made and provided. Before discussing the situation as disclosed by the proofs submitted on the return of the order to show cause we must determine whether in the death case, irrespective of the factual situation as disclosed by the proofs, this court may grant relief at this or any other time.
It is argued that the time prescribed by our Death Act within which an action must be commenced is of the essence of the right to maintain the suit and not a mere statute of limitations, and that a statute creating a liability where none exists in the common law must be strictly complied with and that no explanation as to why the action was not brought *Page 503 
within the time limit will be permitted unless the statute itself contained a savings clause, which our Death Act does not contain.
The general rule is stated in 16 American Jurisprudence 114 §168:
"Matters Affecting Period of Limitation. — Since the period fixed by a statute giving a right of action for wrongful death within which such right may be exercised is usually considered, not as an ordinary statute of limitations, but as a condition to the right to maintain the action, the lapse of such period is, as a general rule, held to be an absolute bar, not recoverable by any of the ordinary exceptions or answers to a statute of limitations. In such case, provisions of other statutes suspending the operation of statutes of limitation under designated circumstances are generally held inapplicable. In the absence of a savings clause in the death statute itself, no delay beyond such period will be allowed to be explained or excused, even though no rights of innocent parties have attached during the delay."
The courts of this state have passed on the question, the leading case, as I view it, being Lapsley, Adm., v. PublicService Corp., 75 N.J. Law 266; 68 Atl. Rep. 1113, in which case Chief-Justice Gummere held:
"The provision in the `Death Act' that every action brought under its authority shall be commenced within twelve calendar months after the death occurs operates as a limitation of the liability of the wrong-doer as well as of the remedy.
"When a statute gives a remedy under particular circumstances, the party seeking such remedy must, in his pleading, allege all the facts necessary to bring him within the statute." See, also, to the same effect, Eldridge v. Philadelphia and ReadingRailroad Co., 83 N.J. Law 463; 85 Atl. Rep. 179; Seitter v.West Jersey Railroad Co., 79 N.J. Law 277; 75 Atl. Rep. 435,
and Bretthauer, Adm., v. Jacobson, 79 N.J. Law 223;75 Atl. Rep. 560.
In 67 A.L.R. 1070, will be found an annotation on the rule of law under discussion as viewed by the author thereof from the great number of cases cited therein:
"In a majority of the jurisdictions it is held that provisions in statutes authorizing actions for wrongful death, which limit the time within which the actions shall be brought, are not properly statutes *Page 504 
of limitations as that term is generally understood, but they are qualifications and conditions restricting the rights granted by the statutes, and must be strictly complied with; and that no explanation as to why actions were not brought within the time limit will prevent the operation of such a provision of the statutes unless the statutes themselves contain a saving clause."
In this annotation the New Jersey cases hereinbefore referred to are listed in support of the general rule.
On page 1074 of the annotation aforesaid, the author points out that there are decisions which hold that the provisions of a death statute as to the time for bringing action are nothing more than a statute of limitations, citing cases from New York, Oklahoma and Kentucky, and in particular citing the case ofSharrow v. Inland Lines, Ltd. (1915), 214 N.Y. 101; L.R.A.1915E, 1192; 108 N.E. Rep. 217, and it is this case upon which the complainants herein place their reliance. It will be noted in the Sharrow Case, however, that the majority opinion pointed out that in some jurisdictions "the time prescribed by the statutes within which the action must be commenced is of the essence of the right to maintain the suit and not a mere statute of limitations," citing Lapsley Adm., v. Public Service Corp.,supra.
In the Sharrow Case it appeared that the limitation of the statute as originally enacted was put in the form of a proviso but that by amendment the time limitation no longer appeared as a proviso, the words "provided that" being omitted, and the clause being made to read merely "such action must be commenced within two years after the decedent's death." The New York court held that with the amendment the time limitation ceased to be a proviso and became a simple requirement that suit should be begun within two years — an ordinary statute of limitations.
In the instant case complainants point out that in the Death Act as originally enacted in New Jersey the limitation of the statute was also put in the form of a proviso and continued in that form until the Revision of 1937 and that an inspection of that Revision, as contained in 2:47-3, discloses that section 2 of the old act has been broken up into *Page 505 
two parts and that instead of the limitation now appearing by proviso there is a separate section which provides:
"Every action brought under the provisions of this chapter shall be commenced within two years after the death of the decedent, and not thereafter."
It is not conceived that the argument of complainants is tenable; in fact, the courts of this state, it seems to me, have decided to the contrary. In the New Jersey Railroad Act, R.S.48:12-151, it is provided:
"Article 25. Actions and Remedies. 48:12-151. Limitation of actions; injuries to persons; death; injuries to property by fire.
"All actions accruing from injuries to persons caused by the wrongful act, neglect or default of any railroad company owning or operating any railroad within this state, shall be commenced and sued within two years next after the cause of action accrued, and not after. Actions by an executor or administrator for injuries causing the death of the testator or intestate shall be commenced and sued within two years next after the death, and not after. All actions for injury done to any property by fire communicated by an engine of any railroad company on any railroad within this state shall be commenced and sued within two years after the cause of action accrued, and not after."
In the case of Grabert v. Central Railroad Company of NewJersey, 91 N.J. Law 604; 103 Atl. Rep. 212, the Court of Errors and Appeals held that under the foregoing act the infancy of an injured person did not exempt him from the limitation fixed by this section.
In Gillette v. Delaware, Lackawanna and Western RailroadCo., 91 N.J. Law 220; 102 Atl. Rep. 673, the Court of Errors and Appeals also held that under the Federal Employers' Liability Act suits must be begun within two years after the day when the cause of action occurred, and that infancy is no excuse for failing to bring suit within two years. The Federal Act is found inU.S.C.A. 45 ch. 56, which reads:
"Actions; limitation; concurrent jurisdiction of courts; removal of case in State Court.
"No action shall be maintained under this chapter unless commenced within two years from the day the cause of action accrued." *Page 506 
It will be observed that neither the New Jersey Railroad Act or the Federal Employers' Liability Act introduce the time limit with a proviso.
The fact that the legislature, in the Revision of 1937,2:47-3, changed the form of the statute as it had theretofore existed, so that the limitation of the time within which suit should be brought was by a separate paragraph instead of by proviso, as it had theretofore appeared, does not indicate a legislative intent to change the substance of the law, as declared by our courts in the Lapsley and other cases theretofore decided. In Crater v. County of Somerset,123 N.J. Law 407 (at p. 414); 8 Atl. Rep. 2d 691, Mr. Justice Heher said:
"There is a presumption against a legislative intention, by a revision of general laws, to effect a change of substance. That presumption is not, ex necessitate, overcome by mere change of phraseology, or the addition or omission of words in the revision; the intention to alter the essence must be expressed in language admitting of no reasonable doubt of the purpose."
See, also, In re Hudson County Elections, 125 N.J. Law 246
(at p. 254); 15 Atl. Rep. 2d 813.
It is also argued by the complainants that courts of equity will restrain the committing of a fraud in all cases, and that the defendants herein, having been guilty of a fraud which caused the complainants to permit the time of the statute to pass, should be restrained from taking advantage of the limitation provided in the Death Act. This question from the law side of the court was passed upon in Bement v. Grand Rapids and IndianaRailway Co. (Supreme Court of Michigan), 160 N.W. Rep. 424;L.R.A. 1917E, 322, and the court held that:
"Fraudulent representations which prevent the bringing of an action under the Federal Employers' Liability Act within the time prescribed thereby will not extend the time for commencing the action."
The court pointed out (at p. 323), that: "The act in question creates a liability where none existed, and takes *Page 507 
away defenses formerly available." The Death Act is a statute of creation and the commencement of the action within the time limit is an indispensable condition of the liability and of the action which it permits. If the action is not instituted within the time limit the defendants are exempt from liability. There being no saving clause in our statute, this court is without power to ingraft any exception to interfere with limit of the time within which suit must be brought.
Having disposed of the Mimnaugh case in so far as injunctive relief is concerned, we pass to the question of whether or not complainants have established a case entitling the passenger plaintiffs to enjoin defendants from taking advantage of the statute of limitations.
Vice-Chancellor Leaming, in Howard v. West Jersey RailroadCo., 102 N.J. Eq. 517; 141 Atl. Rep. 755, points out that the statute of limitations may be lost by conduct invoking the established principles of estoppel in pais, citing Freeman v.Conover, 95 N.J. Law 89; 112 Atl. Rep. 324, and he laid down the rule governing such cases, as follows:
"When defendants' wrongful conduct can be said to have caused complainants to subject their claim to the bar of the statute of limitations, a court of equity should not permit defendants to hold the advantage thus obtained."
He further said:
"A test of an estoppel in pais may be said to be whether, in all the circumstances of the case, conscience and the duty of honest dealing should deny one the right to repudiate the consequences of his representations and conduct; whether the author of a proximate cause may justly repudiate its natural and reasonably anticipated effect.
"One cannot justly or equitably lull his adversary into a false sense of security and thereby cause his adversary to subject his claim to the bar of the statute of limitations and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought."
See, also, Noel v. Teffeau, 116 N.J. Eq. 446;174 Atl. Rep. 145. *Page 508 
Let me say here that as to the Mimnaugh case (had it been necessary to determine the factual question now under discussion in the passenger cases), the affidavits do not disclose such a case as would clearly entitle the Mimnaugh administrator to adinterim restraint. It would appear that the delay in reaching the point of trial was that of the administrator, and to suit the convenience of his attorney, and was not brought about by anything said or done or left unsaid or undone by the agents of defendants. Complainants were never in position so that they were assured of an eventual settlement of the Mimnaugh case. The most they had a right to rely on was that if a proper figure was agreed upon the case would be settled. No figures were ever discussed, and as to this case at least, both parties were dealing at arms-length, and the attorney of the plaintiffs knew, or should have known, that the answering pleading not only denied the ownership and operation of the bus, but alleged that Mimnaugh was guilty of contributory negligence; was driving on the wrong side of the road at the time of the accident, and was intoxicated. There was no duty, under the circumstances, for O'Connor or anyone else to advise the plaintiffs that they had sued the wrong defendant, especially in view of the answer aforesaid.
As to the passenger cases, we must start with the situation as disclosed on the return of the order to show cause and not merely from the impression gained from a reading of the bill of complaint. The bill is so drawn as to make it appear that after the suits were started negotiations for settlement were had and that complainants were ignorant of the company whose bus had been engaged in the collision until advised by defendants' agent after the tolling of the statute. The fact is, and I so find from defendants' affidavits and exhibits, that the attorney for plaintiffs knew before suit started that the allegedly offending bus was that of the Interstate Transportation Company and not Co-ordinated. The misnomer was through an error of plaintiffs' own making and in no sense brought about by defendants.
In addition to the foregoing it must be kept in mind that *Page 509 
in the death case defendant company, by its answer, denied ownership and operation of the colliding bus, in other words, by appropriate pleading the defendant apprised plaintiffs that defendants' contention was that the wrong defendant had been sued, which was notice to plaintiffs that if the passenger suits were prosecuted to the point where defendants were required to answer, defendants would again deny ownership and operation of the bus. But even so, complainants' attorney said that the filing of the answer in the Mimnaugh case did not bring him to the realization that the wrong defendant had been sued and that he did not discover his own error until May 2d 1942. Of course, defendants were under no duty to advise complainants' attorney of his error, other than by appropriate pleadings, but neither did defendants have a right, knowing of the mistake, to foster it by its acts of omission.
The allegation upon which complainants rely to establish their case is of a two-fold nature. First, in the corporate set-up of the three defendants herein, and secondly, the alleged misconduct on the part of one O'Connor, a claim agent for both Co-ordinated and Interstate.
First, it is alleged that Co-ordinated and Interstate are carriers of passengers for hire and that the Public Service Corporation of New Jersey is the holding company of the aforesaid two companies; that all three companies have practically the same board of directors and officers, registered agent and registered office, and that while the personnel of the board of directors of Public Service are not exactly identical, many of its board members are also on the board of the other two companies; that Interstate and Co-ordinated use the same buses, operate them from the same terminals and garages, service them by the same mechanics and carry the same insignia of ownership on the buses, "Public Service of New Jersey," c., and that from these facts complainants charge that the three corporations all compose one owning and operating unit for the purpose of carrying passengers for hire, and that in conducting negotiations for settlement, defendants, their attorneys, servants and agents, deliberately and fraudulently concealed the fact that the wrong defendant *Page 510 
had been sued, with intent to lull complainants into a sense of security until after the statute had tolled.
Secondly, it is alleged that O'Connor, claim agent for all defendant companies, "from the very beginning" of the negotiations with complainants' attorney, advised "that there was no reason why the cases should not be settled, provided a satisfactory amount could be agreed upon;" that these negotiations extended into the month of December, 1940, and that as late as January 16th, 1941, O'Connor is alleged to have said it would not be necessary to prosecute the two suits in the passenger cases; that they would be settled, and as to the death case, there was no doubt but that settlement would also be made; that he also said he did not want to settle the cases one at a time, that he preferred to close them all out at one time.
As to the charge in the bill of complaint against the corporate set-up, the answers of defendants specifically deny any improper motive in either its origin or use, and sets forth that the Public Service Corporation of New Jersey is a holding company which neither owns nor operates auto buses or any conveyances for the transportation of passengers for hire as a common carrier; that the Public Service Co-ordinated Transport operates surface cars and auto buses as a common carrier in intra-state transportation; that Public Service Interstate Transportation Company owned and operated auto buses solely for the transportation of passengers in interstate transportation at the time of the collision.
I must find from the affidavits before me that the complainants have not established their charge that the corporate set-up was conceived in fraud or that defendants in any way intentionally used this set-up to confuse complainants. At the outset, complainants' attorney knew from a photograph in his possession that there was painted on the colliding bus, in large letters, "Public Service Interstate Transportation Company." The most that may be said is that the mere fact that O'Connor was agent for both companies may have left complainants' attorney with the impression that O'Connor's dealings were in behalf of the defendant company he (the attorney) had intended to sue. However this may be, the charge that O'Connor advised that these passenger cases *Page 511 
would be settled and that there was no need to proceed further in the prosecution of these suits, although met by an absolute denial by O'Connor, creates a condition of mind so that I am unable to say, on the showing made before me on the return of the order to show cause, that complainants may not be successful on final hearing. If O'Connor did promise, as alleged, it may well be that the defendant should be barred from pleading the statute of limitations. The ultimate decision of this question is of too much importance to decide other than on final hearing, after personal appearances of witnesses and cross-examination, and in like manner, the complainants should be permitted to submit their testimony in support of the other allegations of the bill as those allegations bear on the passenger cases.
The purpose of ad interim restraint is to enable the court to fully deliberate and investigate the case in order that the injunction maintains the status quo so that the parties are in substantially the same plight when the final decree is entered as they were when the litigation began. State v. DuPont deNemours Powder Co., 79 N.J. Eq. 31; 80 Atl. Rep. 998; Gluck v.Rynda Development Co., 99 N.J. Eq. 788, 805; 134 Atl. Rep. 363;Id., 100 N.J. Eq. 554; 135 Atl. Rep. 917; Benton v. Kernan,126 N.J. Eq. 343; 8 Atl. Rep. 2d 719.
I am, of course, aware of the principle that in many cases where injunctive relief is sought that to doubt is to deny, but when it clearly appears that to deny would mean to cause complainants irreparable damage, ad interim restraint may be granted. State v. DuPont de Nemours Powder Co., supra.
As matters stand at the present time, restraining the defendants as to the passenger cases would not cause injury of any kind. If defendants are successful on final hearing it would merely cause a postponement of the time when the defendants would be enabled to set up the bar of the statute.
In Isolantite, Inc., v. United Electrical R. M. Workers,130 N.J. Eq. 506, 514; 22 Atl. Rep. 2d 796, Vice-Chancellor Bigelow held:
"On application for an interlocutory injunction when the respective rights of the parties are not clear, the court considers what injury the defendant would suffer from an injunction, *Page 512 
assuming that he shall prevail at final hearing and what injury might be done complainants if the injunction be denied and yet complainant should finally win. This is the balancing of conveniences. It is a factor on practically every application for an interlocutory injunction."
In Christiansen v. Local No. 680 of the Milk Drivers, c.,127 N.J. Eq. 215; 12 Atl. Rep. 2d 170, Mr. Justice Heher said, in substance, that when maintenance of the status quo
will result in no material damage to defendant's rights or, if so, it will be comparatively slight, there is a duty upon the court to continue the restraint. See, also, Benton v. Kernan,supra; Id., 125 N.J. Eq. 412; 6 Atl. Rep. 2d 195.
The result is that as to the Mimnaugh case, the order to show cause and ad interim restraint must be dismissed, but as to the two passenger cases, the restraint will be continued until final hearing and decision on the merits.