**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0260-19T4

L.C. and G.C.,

     Plaintiffs-Respondents,

v.

B.L.,

     Defendant-Appellant,

and

L.A.P.,

     Defendant.

_____

Argued November 13, 2019 – Decided January 2, 2020

Before Judges Yannotti and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FD-21-0107-20.

Grace E. Kelly argued the cause for appellant (Legal Services of Northwest Jersey, attorneys; Grace E. Kelly, on the brief).

Respondents have not filed a brief.

PER CURIAM

Defendant B.L. appeals on leave granted from an order of the Family Part dated August 13, 2019, which granted a motion by plaintiffs L.C. and G.C. for grandparent visitation pendente lite. We reverse.

We briefly summarize the relevant facts, as set forth in the record presented on appeal. Plaintiffs are the grandparents of R.P. B.L. is the child's mother. L.A.P. is the child's father and plaintiffs' son. B.L. and L.A.P. were involved in a romantic relationship for about three years. B.L. and L.A.P. resided with plaintiffs before R.P. was born in February 2018. Thereafter, they continued to reside with plaintiffs until November 2018. At that time, B.L. and L.A.P. moved to a townhouse, for which plaintiffs paid the rent.

Plaintiffs describe B.L.'s relationship with L.A.P. as "tumultuous." According to plaintiffs, in May 2018, B.L. and L.A.P. were involved in a physical altercation. B.L. called the police and L.A.P. was arrested. B.L. returned to plaintiffs' home the following day. Apparently, L.A.P. was released at some point thereafter.

In January 2019, B.L. advised L.C. that she would never let her see R.P. again if L.C. did not stop styling the hair of a third-party. Several days later,

2

L.C. told B.L. to seek mental-health care. B.L. was hospitalized at a medical center for three days. After she was released, B.L. allegedly thanked L.C. for her assistance and apologized for her "irrational behavior."

In March 2019, B.L. and L.A.P. were involved in another violent dispute, which they resolved with the assistance of their attorneys. This incident resulted in supervised parenting time, evaluations, and reports to the Division of Child Protection and Permanency. In April 2019, B.L. and L.A.P. agreed to the entry of a consent order, which states that they would share joint legal custody of R.P. and have equal parenting time.

Shortly thereafter, B.L. and L.A.P. were involved in another violent disagreement, after which L.A.P. was arrested and incarcerated. The trial court entered a restraining order, which prevents L.A.P. from contacting B.L. or R.P. Following this incident, B.L. filed an application for sole custody of R.P., but later withdrew the application.

On May 6, 2019, plaintiffs and B.L. signed a handwritten agreement concerning visitation. The agreement states: "We agree to have visits with [R.P.] Wednesday[s] and Fridays from 2[:00] pm to 7:00 pm and Sundays from 8[:00] am till Monday 7:30 pm. Pick up and [d]rop off at Independence P.D."

On May 8, 2019, the first Wednesday following the signing of the agreement, B.L. brought the child to plaintiffs' home for visitation.

Two days later, B.L.'s attorney informed plaintiffs that B.L. wanted a more flexible visitation arrangement. In June 2019, plaintiffs' attorney contacted B.L.'s attorney in an effort to resolve the dispute. B.L.'s attorney indicated she would discuss the matter with B.L. and respond accordingly. Plaintiffs claim they did not receive a response.

On July 1, 2019, plaintiffs filed the complaint in this matter, seeking enforcement of the agreement and the award of grandparent visitation. They thereafter filed a motion for visitation pendente lite. In their supporting certification, plaintiffs asserted that L.A.P. wanted them to continue to see R.P. while L.A.P. is unable to do so. B.L. opposed the motion and filed a cross-motion seeking dismissal of the complaint and the award of attorney's fees.

Thereafter, the Family Part judge heard oral argument on the motions and placed an oral decision on the record. The judge found that plaintiffs had established a prima facie case for grandparent visitation but stated that there were factual disputes relevant to plaintiffs' claims. The judge stated that he would order discovery and schedule the matter for a plenary hearing.

The judge ruled that "[i]n the meantime," he would order the parties to comply with the handwritten agreement. The judge noted, however, that an issue to be addressed in the plenary hearing is whether the agreement is enforceable. The judge memorialized his decision in an order dated August 13, 2019.

The order stated that grandparent visitation would begin on August 21, 2019, without prejudice, and that plaintiffs and B.L. must attend mediation on a specified date. The order further provided time for discovery, scheduled the matter for a plenary hearing, and denied B.L.'s motion for a stay of the order pending appeal.

B.L. filed emergent motions for leave to appeal and for a stay pending appeal. Plaintiffs filed a letter in response to the motions, stating that they were relying on the trial court's decision. We thereafter granted B.L.'s motion for leave to appeal, accelerated the appeal, and stayed the trial court's order. Plaintiffs have not submitted a brief on the appeal, and L.A.P. has not participated in the appeal.

On appeal, B.L. argues that the trial court erred by granting plaintiffs' motion for pendente lite visitation. She contends plaintiffs failed to meet the criteria for such relief.

In Crowe v. De Gioia, 90 N.J. 126, 132-35 (1982), the Court summarized the criteria for the issuance of preliminary relief. "[A] preliminary injunction should not issue except when necessary to prevent irreparable harm." Id. at 132 (citing Citizens Coach Co. v. Camden Horse R.R. Co., 29 N.J. Eq. 299, 303 (E. & A. 1878)). Furthermore, "temporary relief should be withheld when the legal right underlying [the] plaintiff's claim is unsettled." Id. at 133 (citing Citizens Coach, 29 N.J. Eq. at 304-05).

In addition, "a preliminary injunction should not issue where all material facts are controverted." Ibid. (citing Citizens Coach, 29 N.J. Eq. at 305-06). Therefore, the party seeking temporary relief "must make a preliminary showing of a reasonable probability of ultimate success on the merits." Ibid. (citing Ideal Laundry Co. v. Gugliemone, 107 N.J. Eq. 108, 115-16 (E. & A. 1930)).

The purpose of temporary relief "is to maintain the parties in substantially the same condition 'when the final decree is entered as they were when the litigation began.'" Id. at 134 (quoting Peters v. Public Serv. Corp. of N.J., 132 N.J. Eq. 500 (Ch. 1942). Furthermore, when determining whether to grant preliminary relief, the court should consider "the relative hardship" of the parties. Ibid. (citing Isolantite Inc. v. United Elec. Radio & Mach. Workers, 130 N.J. Eq. 506, 515 (E. & A. 1941)).

A-0260-19T4

Here, plaintiffs are pursuing a claim for grandparent visitation under the Grandparent Visitation Statute (GVS), N.J.S.A. 9:2-7.1.  Under the GVS, "[a] grandparent . . . of a child residing in [New Jersey] may make application before the Superior Court . . . for an order for visitation.  It shall be the burden of the applicant to prove . . . that the granting of visitation is in the best interests of the child."  N.J.S.A. 9:2-7.1(a).

The GVS represents an infringement on the fundamental right to parent, and the only interest that permits the State "to overcome the presumption in favor of a parent's decision and to force grandparent visitation over the wishes of a fit parent is the avoidance of harm to the child."  Moriarty v. Bradt, 177 N.J. 84, 115 (2003).  Therefore, to obtain visitation under the GVS, the grandparents must establish, by a preponderance of the evidence, that such visitation is necessary to avoid harm to the child.  Id. at 117.

Moreover, the court may not approve a visitation schedule unless the grandparent first establishes the potential for harm to the child and overcomes the presumption in favor of parental decision-making.  Rente v. Rente, 390 N.J. Super. 487, 493-94 (App. Div. 2007).  The court must determine if visitation is in the child's best interests, based on the factors enumerated in the GVS.  Id. at 494.  These factors include:

7

(1) The relationship between the child and the applicant;

(2) The relationship between each of the child's parents or the person with whom the child is residing and the applicant;

(3) The time which has elapsed since the child last had contact with the applicant;

(4) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;

(5) If the parents are divorced or separated, the time sharing arrangement which exists between the parents with regard to the child;

(6) The good faith of the applicant in filing the application;

(7) Any history of physical, emotional or sexual abuse or neglect by the applicant; and

(8) Any other factor relevant to the best interests of the child.

[N.J.S.A. 9:2-7.1(b).]

In the certification submitted in support of their complaint, plaintiffs state that R.P. will suffer "psychological harm" if removed from plaintiffs' life because they have a "very involved, close relationship" with the child and he will lose the "stability" they provide. Plaintiffs assert they "have always been very involved in [R.P.'s] life." They claim to have been actively involved in

8

raising R.P. and assert that they have acted not only as his grandparents, but also as the child's psychological parents. They allege grandparent visitation will not affect R.P.'s relationship with B.L.

In addition, plaintiffs acknowledge that B.L. and L.A.P. share joint custody of R.P., but note that L.A.P.'s incarceration leaves B.L. with sole custody of the child. They state that B.L. has "cut" them out of R.P.'s life even though they have been a "stable fixture in his life . . . ." They claim this situation is not in R.P.'s best interests. They allege R.P. will suffer harm from their "abrupt removal" from his life because of their close relationship with him.

As stated previously, the Family Part judge found that plaintiffs had established a prima facie case for grandparent visitation. However, the judge made no finding that such visitation would be in the best interests of the child. The judge also did not assess the statutory factors under the GVS and did not find that plaintiffs have established a reasonable probability of success on the merits of their claim for visitation under the GVS.

In this regard, we note that the legal rights underlying plaintiffs' claim are unsettled, and B.L. disputes the material facts that underlie the claim. Plaintiffs assert that they have acted as the child's psychological parents, but they submitted no evidence to support that assertion other than their own statements.

9

Plaintiffs also claim that grandparent visitation will not affect the child's relationship with B.L., but the trial court's order provides for extended visits for extended periods of time. As noted, the child was born in February 2018, and at the present time, he is about one year, ten months old. The judge did not consider whether compelled visitation with plaintiffs on the schedule in the handwritten agreement would infringe upon B.L.'s fundamental right to parent the child.

The Law Division judge also found that R.P. would not suffer any harm if visitation is permitted, but that finding appears to have been based on "general and conclusory allegations of harm" that are not sufficient to support visitation under the GVS. See Daniels v. Daniels, 381 N.J. Super. 286, 294 (App. Div. 2005). Moreover, the judge did not find that B.L. would be harmed unless plaintiffs are allowed visitation, a key finding required for any compelled grandparent visitation.

Furthermore, in ordering pendente lite visitation, the judge relied upon the handwritten agreement between plaintiffs and B.L. The judge noted, however, that the enforceability of this agreement is an issue to be addressed at the plenary hearing.

In Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016), we stated that "[a]bsent fraud or unconscionability, [appellate] courts will enforce family-related agreements as they would any contractual agreement." In this case, however, B.L. argues that plaintiffs must first demonstrate they are entitled to visitation under the GVS before the agreement can be enforced.

B.L. notes that while she and plaintiffs signed the agreement, a court never approved it and the court did not find that grandparent visitation would be in the child's best interests, or that the child would suffer harm unless such visits are permitted. B.L. contends that, in the absence of such findings, the agreement cannot be enforced.

We are convinced that B.L. has established, at least for purposes of the grant of preliminary relief, that plaintiffs' right to enforce the agreement is unsettled. Moreover, there are material facts in dispute as to whether the agreement should be enforced.

We therefore conclude that the judge erred by granting plaintiffs' motion for grandparent visitation pendente lite. Here, plaintiffs have presented a claim for visitation under the GVS, and they also seek to enforce their agreement with B.L. They are entitled to plenary consideration of these claims. Plaintiffs have not, however, established that such visitation should occur pending the plenary

11

hearing on their complaint. We express no views as to the merits of plaintiffs' claims.

Reversed and remanded to the trial court for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION