### THE ARTISTIC PORCELAIN COMPANY

*v.*

### NOAH W. BOCH, trading as The American Porcelain Works.

[Decided October 22d, 1909.]

1. A contract that the covenantor will not engage in a competitive business, although a contract in restraint of trade, is not opposed to public policy but is valid and enforceable, when the restraint contracted for is partial and is reasonably required for the protection of the covenantee in the use and enjoyment of the particular business the covenantor contracts not to carry on.

2. It will be presumed that the parties intended to make a valid contract and that they designed to provide a reasonable restraint.

3. Where the restraint is without qualification it is unreasonable and contrary to public policy; but where it is subject to some qualification, either as to time or space, the question is whether it is reasonable, and, if reasonable, it is good in law.

4. A contract founded upon adequate consideration that the covenantor will not engage in the manufacture or sale of white porcelain door knobs, unlimited as to space, but limited as to time to a period of approximately five years, is reasonable and will be enforced by injunction.

On application for preliminary injunction.

*Mr. W. Holt Apgar,* for the complainant.

*Messrs. Clark & Case,* for the defendant.

WALKER, V. C..

The bill of complaint alleges that the complainant corporation, on July 25th, 1906, entered into an agreement in writing with the defendant, which recited that the complainant was then manufacturing black and brown door knobs, shutter knobs and wheels at the plant of the American Porcelain Works, so called, and the complainant thereby sold to the defendant all right, title and interest it might have in the goods, chattels, stock in trade, chemicals, materials and other personal property then on the plant of the American Porcelain Works, for which the defendant agreed to pay a certain price, and the agreement then proceeds:

"The said Boch further agrees as an important part of the consideration of this sale and transfer that he will abstain from the manufacture or sale, directly or indirectly, of porcelain, or of any imitation thereof, except tile, until January first, nineteen hundred ten, except as hereinafter provided, and the said Porcelain Co. agrees that so long as the said Boch will promptly furnish it with such black and brown door knobs as may be required of it by the Skillman Hardware Mfg. Co. not to exceed 150,000 in any one month until May first, nineteen hundred and ten, it will abstain from the manufacture or sale, directly or indirectly, of black and brown door knobs, mineral knobs, black and brown shutter knobs and black and brown wheel, and the said Boch further agrees that until said May first, nineteen hundred and ten, he will furnish to the Artistic Porcelain Co. for the said Skillman Hardware Mfg. Co. requirements of black and brown door knobs not to exceed 150,000 in any one month, said mineral door knob to be delivered to the Skillman Hardware Mfg. Co. and charged at $5.50 per M and Jet at $6.00 per M less 3% discount."

The parties had business relations with each other under this agreement, with perhaps some variations of its terms (other than those contained in the above-recited part), by mutual agreement, until April 7th, 1909, when they entered into another agreement containing, among others, the following stipulation:

"It is further covenanted and agreed between the parties hereto that the stipulations, covenants and agreements contained in said contract of July twenty-fifth, nineteen hundred and six between the parties hereto by which the party of the second part binds himself not to manufacture porcelain ware excepting tile, until January first, nineteen hundred and ten and the party of the first part binds itself not to manufacture jet or mineral door knobs for the same period shall be and the same is hereby extended, as part of this agreement, for five years from said date, to wit, until the first day of January, nineteen hundred and fifteen."

On June 3d and 11th, 1909, the complainant ordered of the defendant certain jet and mineral knobs which the defendant refused to supply, writing the complainant under date of June 10th that the defendant did not care to fill the order and recognized no contract by which he might be compelled to do so, and on June 12th he also wrote the complainant referring him to the letter of the 10th, remarking that he meant exactly what he said and would fill no orders on the complainant's account.

The bill and affidavits show that in July and August, 1909, the defendant manufactured thousands of white porcelain door knobs and has the same in stock ready to be placed on the market and sold. The bill prays that the contract between the parties may be specifically enforced and that the defendant may be restrained from manufacturing or selling directly or indirectly any white or porcelain knobs during the period in the contracts mentioned, namely, until January 1st, 1915.

With the injunctive feature of the bill we are at present alone concerned.

Two defences have been interposed—*first,* that the agreements are void as being in restraint of trade, and *second,* that the complainant has violated the contract and the defendant has elected to rescind.

A contract that the vendor of a business will not engage in a competitive business, although a contract in restraint of trade, is not opposed to public policy but is valid and enforceable when the restraint contracted for is partial and is reasonably required for the protection of the purchaser in the use and enjoyment of the business purchased. *Trenton Potteries Co.* v. *Oliphant, 58 N. J. Eq. (13 Dick.) 507, 508.* In that case the contract did not embrace one whole area, but several areas disjunctively de-

scribed, as the State of Maine, the State of New Hampshire or the State of New Jersey, and it was held that no restriction could be imposed upon the vendor as to any area beyond the State of New Jersey, but within that area an injunction should go restraining competitive business.

The latest case in our courts is that of *Fleckenstein Brothers' Co.* v. *Fleckenstein, 71 Atl. Rep. 265,* in which the defendant sold his business and covenanted not to engage in, promote or give his name to any similar business located within five hundred miles of Jersey City for twenty years. It was held that the restraint was only partial, and was severable and sustainable in so far as it applied to the city, even if unenforceable as to outside territory. The limitation as to time, independently of extent of territory or in connection with it, was not considered.

In these cases it is held that the court will presume that the parties intended to make a valid contract and that they designed to provide a restraint which will be reasonable. This, of course, is subject to the universal rule that the parties cannot make the law, but must follow it, and when, upon a given state of facts, a rule of law operates, it is inexorable, and the intention of the parties to the contrary must be overriden.

Now, it is perfectly obvious that the restriction as to territory in the agreement under consideration is unlimited. No areas are named as in the *Trenton Potteries* and *Fleckenstein Cases,* and therefore the court is given no opportunity to interpret the contract as to area, in respect to which question there is no room whatever for construction, there being nothing to construe. Therefore, tested alone by the question of extent of territory, the agreement appears plainly to be general and unlimited, and, consequently, inoperative and void. It remains to be seen whether the time limit of the extension agreement, being a period of approximately five years, makes the contract one of partial restraint to such an extent as to take it out from under the operation of the general rule.

In *Ping. Treat. L. Cont. (1905)*, *tit.* "*Restraint of Trade*," *340 et seq.,* the author lays it down that the result of the English authorities appears to be that where the restraint is without qualification it is unreasonable and contrary to public policy,

but where it is subject to some qualification, either as to time or space, the question is whether it is reasonable, and, if reasonable, it is good in law; that reasonableness depends upon all the circumstances, which must be duly weighed in each case; that the American decisions have not gone so far as the English, but that the old law has been a great deal modified in some jurisdictions; that the generality of time or space must always be an important factor in the consideration of reasonableness, although not *per se* a decisive test; that what is reasonable in a given case is a question not of fact, but of law, for the court.

There are cases holding that a restriction covering a period of five years is unreasonable, as in *Bishop* v. *Palmer, 146 Mass. 469,* and there are cases holding that such a limitation of time is not unreasonable, as in *Oakdale Manufacturing Co.* v. *Garst, 18 R. I. 484.*

From the affidavits submitted it is apparent that there is a large demand for white porcelain door knobs and that they can be readily sold. There is no showing that they are patented or that anyone has a lawful monopoly in them. I do not see that the rights of the public will be harmed by an enforcement of the agreement made by Mr. Boch, the covenantor.

Vice-Chancellor Green, in *Ellerman* v. *Chicago Junction Railways Co., 49 N. J. Eq. (4 Dick.) 217* (at *p. 253*), said (quoting from *Diamond Match Co.* v. *Roeber, 106 N. Y. 473*):

"To the extent that the contract prevents the vendor from carrying on the particular trade it deprives the community of any benefit it might have from his entering into competition. But the business is open to all others and there is little danger that the public will suffer harm from lack of persons to engage in a profitable industry. Such contracts do not create monopolies. They confer no special or exclusive privileges."

My judgment is that the covenant in question, which is certainly founded upon adequate consideration, is not one in illegal restraint of trade, but is valid and enforceable.

Several defences on the facts were urged at the hearing. One was that the defendant had been dragooned into making the contract. This contention is without force. He certainly was not subjected to any duress, and even if he dealt at some disad-

vantage 'with the complainant, being *sui juris,* he could have refused to deal at all. On this head no ground is presented justifying a refusal to enforce the contract.

Another defence was that the complainant had violated the contract and the defendant had a right to treat it as rescinded. Much of the claimed violation occurred prior to the agreement of April 7th, 1909, which expressly provides that the stipulations and agreements of the contract of July 25th, 1906, concerning the subject-matter of this suit, shall be extended for five years from January 1st, 1910. That is not all: Mr. Boch in his affidavit says that on May 24th, 1909, he signed and mailed to the complainant company a notice wherein he informed the complainant that under the contract of July, 1906, there was due to him, with reference to firing kilns, the sum of $720 a year, amounting to over $1,500; also that upon refusal of payment or recognition of the claim it would result in a forfeiture of the contract. Furthermore, in his affidavit he denies that with the exception of such modification as may be contained in the contract of April 7th, 1909, there was any modification agreed to by him concerning the subject-matter of the documents, and he says he denies that he consented to any modification of the condition concerning the firing of kilns.

Defendant makes the further contention that he is financially responsible and that the complainant has an adequate remedy at law. The innumerable instances in which a violation of a contract of the kind under consideration has been enjoined are rested upon the ground that from the nature of such cases just and adequate damages cannot be estimated for a breach of the contract, and that injunctive relief avoids a multiplicity of actions. The objection is not tenable.

The complainant, in my opinion, is entitled to the relief it seeks. The result is the order to show cause will be made absolute, and an injunction will issue according to the prayer of the bill. The complainant is entitled to costs against the defendant.