The defendant below, an employe of the complainant, Ideal Laundry Company, as a condition to his continued employment, made a contract in writing, whereby he accepted employment by the company at its plant at West New York, Hudson county, New Jersey, from September 28th, 1928, to September 28th, 1930, as assistant floor supervisor, at a stated salary. The contract further provided "that in the event of *Page 110 
the termination of this agreement for any cause whatsoever [employer being the sole judge as to whether this said agreement is terminated] that the employe should not enter into, manage, engage, concern himself, operate or conduct, directly or indirectly, either personally or otherwise, or as an employe in the laundry business or similar business as that conducted by Ideal Laundry Company, in the entire counties of Hudson and Bergen, in the State of New Jersey, for a term of two years from the date of the termination of this agreement."
On December 10th, 1929, complainant filed its bill to enforce the negative terms of that contract and to enjoin the disclosure of secret information. An order to show cause was made containingad interim restraint enjoining defendant from violating such negative covenant and from disclosing secret information. The matter was heard on bill and affidavits, and answering affidavits, and on January 2d 1930, an order was made which enjoined defendant in the language of the negative covenant, "from entering into, managing, engaging himself in, concerning himself in, operating or conducting, directly or indirectly, either personally or otherwise, or as an employe in the laundry business or similar business as that conducted by complainant in the entire counties of Hudson and Bergen, in the State of New Jersey," until the further order of the court. This is the defendant's appeal from that order.
We think that such preliminary injunction should stand until final hearing.
It is admitted that complainant, for twenty-three years, has been engaged in the general laundry business throughout the counties of Hudson and Bergen; that defendant was employed as assistant floor supervisor of the float-ironed department; that on November 22d 1929, he voluntarily left the employ of complainant, and that he immediately entered into the employ of the Holland Laundry Company, conducting a general laundry business in Hudson county, a direct competitor of complainant.
Courts of equity will protect an employer against a breach of a written agreement, founded upon a good consideration, *Page 111 
and reasonable in its terms, made by an employe, not to engage with a rival after the termination of the employment, where the services of the employe have been of such a character that he gained knowledge of his employer's business methods and secrets, the disclosure of which to a rival would result in irreparable injury to the employer, and where it further appears that the purpose of the subsequent employment, resulting in the breach, was to obtain the benefit of those secrets, and that there is imminent danger that through such subsequent employment such secrets would be disclosed. McCall Co. v. Wright, 198 N.Y. 143; Harrison v. Glucose Sugar Refining Co., 53 C.C.A. 484;116 Fed. Rep. 304; Sarco Co. v. Gulliver, 3 N.J. Mis. R. 641;affirmed, 99 N.J. Eq. 432; Scherman v. Stern, 93 N.J. Eq. 626;Owl Laundry Co. v. Banks, 83 N.J. Eq. 230; FleckensteinBrothers Co. v. Fleckenstein, 76 N.J. Law 613; Myers v. SteelMachine Co., 67 N.J. Eq. 300; affirmed, 68 N.J. Eq. 795.
Without regard to what may possibly appear upon final hearing, we feel constrained to say that the complainant's affidavits, even when considered in connection with those of the defendant, bring this case within that rule, and justify the preliminary injunction.
Where, as here, an employment is of such a character as to inform the employe of business methods and secrets, a contract of employment at a stated salary is a sufficient consideration for the condition that the employe will not engage in a similar employment within a reasonable time and territory after the termination of such employment.
We think the agreement was not unreasonable with respect to time or space.
Where, as here, a person is employed as assistant floor supervisor of the float-ironed department of a laundry business carried on in and extending over the counties of Hudson and Bergen, in the State of New Jersey, his agreement, in consideration of such employment, that for two years after the termination of his contract, he would not engage directly or indirectly, or as an employe, in the laundry business or similar business in such counties, is not unreasonable in point *Page 112 
of time nor in point of space. Sternberg v. O'Brien, 48 N.J. Eq. 370; Scherman v. Stern, supra. The restraint was only a partial one, and was no greater than is reasonably required for the reasonable protection of the interest of the complainant. It is quite reasonable as to time, and also as to space, because, outside of the counties named, the whole world was open to the defendant, including of course the neighboring and convenient cities of Newark, Paterson, New York and Brooklyn.
The affidavits disclose that in the year 1928 complainant company employed an engineer and expended about $20,000 in improving its method of doing business in the float-ironed department; that the methods and processes of doing business in that department were known to the supervisors and assistant supervisors, and that was the reason for the adoption of the contract then adopted; that the defendant, who held the position of assistant floor supervisor in the float-ironed department, by reason of his position, learned of the various improvements developed from time to time in such department and of the unique and secret methods in use in the establishment.
The affidavits of complainant show that the methods were secret, and that warnings were given with respect to disclosures. It is true that defendant in his affidavits denies generally that complainant's methods differed from other laundries and complainant's methods are secret methods; but we think his affidavits themselves negative such statement.
Thus in his affidavit defendant says:
"The means and methods of doing business used in the various laundries are substantially identical and the differences are in but minor details * * *."
Again he says:
"and the methods and processes in different plants vary in butminor details to suit the convenience and physical conditions of the particular plant." *Page 113 
Again referring to the statement of complainant that it had expended $20,000 in improving the methods of its float-ironed department in 1928, defendant says:
"There were no new changes in methods, processes or technique made during that period of time, except minor changes and thediscarding of one of the two well-tried methods of machineironing."
Again he says:
"nor were those methods, processes or technique existing after the making of the contract, different from those existing before the making of the contract, except for very minor details."
And —
"As before stated, the methods and processes and departmental organization are substantially the same in most laundries * * *."
Again he repeats that,
"The processes and methods and technique were the same, exceptfor minor changes, before the inauguration of these employment contracts as they were after * * *."
He says that the book of technique is not secret and is simply "a compilation of written orders to the floor supervisors * * *."
Now, we remark that it is clear that this book of technique is not any standard book, but has been developed by complainant. And we think that the affidavits considered as a whole fairly show that the complainant's methods of doing business in the float-ironed department were secret. While such different methods adopted by the complainant from time to time are what defendant calls "minor changes" or "minor details" (without saying what they were), we cannot say that they were unimportant. It may well be that a slight change in method may be of great importance, as complainant contends. Moreover, the conclusion of the defendant that they were "minor" is negatived by the complainant's affidavits. The admitted fact that some "well-tried" methods were "discarded" *Page 114 
indicates that the complainant was profiting by experience.
We think that the reasonable inference from the proofs is that the disclosure of these business methods and secrets to the complainant's rival would result in irreparable injury to the complainant.
Where, as here, an employe breaches a valid contract not to engage with a rival after the termination of the employment, and where the services of the employe have been of such a character that he gained knowledge of his employer's business methods and secrets, and where the purpose of the subsequent employment, resulting in the breach, was to obtain the benefit of those methods and secrets, the court may presume that irreparable injury will ensue.
In the present case the facts and circumstances require that inference.
If complainant would not be injured by defendant going to a competitor, why were these employment contracts inaugurated? Defendant himself states the circumstances. One Schreiman was the plant superintendent of complainant from 1923, and in that capacity was in charge of all departments. The defendant says that Schreiman "is fully familiar with practically every method and process of the Ideal Laundry Company and with its technique book almost in its entirety, since Mr. Schreiman established these in the Ideal Laundry Company, and every change in the method, process and technique book made while he was in itsplant went through his hands for approval. The changes in the methods, processes and technique of the Ideal Laundry Company since Mr. Schreiman left its employ have been of a very minororder."
Schreiman left the employ of the complainant about March, 1928, and, almost immediately thereafter, established the Holland Laundry Company, and is now its president. It is this competitor of complainant to which defendant went. Defendant says that it was because Schreiman left that these employment contracts were inaugurated in September, 1928. That may be true, but why? The reasonable inference is that *Page 115 
complainant saw its secret methods used against it by its former employe, and it intended, as was its right, to prevent that thing happening again. While Schrieman knew everything which had occurred up to the time he left, he did not know what changes had been made as a result of experience after he left. That there were changes, defendant conceded, although he calls them "minor." In March, 1928, Schreiman left, established the Holland laundry, and in November, 1929, defendant left and went to the Holland laundry. By this method, apparently, the Holland laundry was endeavoring to keep abreast of the complainant. The defendant denies that he intends to disclose any secrets; but he also denied that there were any secrets. He complains that others have left the employ of complainant and have not been prosecuted, and that some employes of complainant were not asked, or had refused, to sign contracts. But he signed the contract, and it may well be that the other employes did not have the knowledge or the ability to injure complainant. Defendant says that inspections of the plant of complainant were permitted. But that may mean nothing. It may well be that to discover the method of operation one must actually operate, not merely look.
From what has been said it is reasonable to infer that the purpose of the defendant's employment with the complainant's competitor was to obtain the benefit of his knowledge of complainant's business methods and secrets and that there was imminent danger that through such employment such secrets would be disclosed.
But the defendant contends that a temporary injunction could not lawfully issue in the face of his denial of secret methods contained in his affidavits.
We think that it could, in view of the character of such denial. While the general rule is that a preliminary injunction will not issue where the material fact in complainant's bill and affidavits, on which the complainant's right depends, is met by a full, explicit and circumstantial denial under oath, yet, where, as here, the denial lacks these essential qualities, *Page 116 
and upon the entire showing from both sides it appears reasonably probable that the complainant had the right claimed, the injunction may issue. Scherman v. Stern, supra; Brunetto v.Montclair, 87 N.J. Eq. 338; Meyer v. Somerville Water Co.,79 N.J. Eq. 613; Citizens' Coach Co. v. Camden Horse Railway Co.,29 N.J. Eq. 299.
Tested by that rule the defendant's affidavits are insufficient. In this connection we again point out that the defendant's affidavits, in treating of the respective methods of complainant and other laundries, speak of them as"substantially" similar, conceding what he terms "minor"
differences, and that, while insisting that the methods before the departure of Schreiman were substantially similar to those in use now, he concedes what he terms "minor" changes. This is the mere conclusion of the affiant, and not the full, explicit and circumstantial denial required by the rule, and when considered in connection with complainant's affidavits, we feel constrained to say that upon the entire showing it appears reasonably probable that the complainant had the right claimed, and that therefore the injunction was properly awarded.
The order under review will be affirmed, with costs.
For affirmance — THE CHIEF-JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.
For reversal — None. *Page 117