Complainant is engaged in the business of giving credit reports to its subscribers, as well as collecting overdue accounts for them. Its main office in New Jersey is situate in Atlantic City and it maintains branch offices in various counties in this state, as well as in Philadelphia. Its branch *Page 361 
offices in the locations affected by this litigation are in Wildwood and Ocean City, in Cape May county, and Bridgeton in Cumberland county. The territory served by the Bridgeton office is all of Cumberland county, Salem county and parts of Atlantic county. Its Wildwood office serves those parts of Cape May county not served by the Ocean City office. Those portions of Atlantic county not served by the Bridgeton office are under the jurisdiction of the Atlantic City office, and that part of Atlantic county served by the Bridgeton office may be generally said to be the rural section of Atlantic county, extending eastwardly from Cumberland county for a radius of approximately ten miles, and northeastwardly about six miles.
Complainant's business has been continuously and successfully conducted for many years and it has unquestionably built up and owns a valuable and favorably known credit reporting and collection business which has been progressive throughout the years.
In the early part of March, 1936, complainant gave defendant employment, on probation, working out of the Bridgeton branch. He started as a collector. He advanced by promotions to manager of that branch office and as such became fully cognizant of complainant's methods and its subscribers, as well as potential subscribers throughout that county. In addition to this, he had done some work in Cape May county and had contacted some of complainant's subscribers therein, and particularly those within the jurisdiction of the Wildwood office.
In May of 1936 defendant signed an agreement with the complainant, of which the following is a partial copy:
"In partial consideration of my employment by you, I hereby agree that any information received by me in the course of my employment, and concerning the personal, financial, or other affairs of firms or corporations, will be treated by me in full confidence and will not be revealed to the subjects or to any other persons.
"I further agree that I will not engage, either as employer, proprietor, or employe, in the business of credit reporting, collections, public accounting, or allied lines, in the counties of Atlantic, Cape May, and Cumberland, for a period of three years after the discontinuance of my employment with you." *Page 362 
On or about February 14th, 1939, defendant's employment ceased, for what reason does not appear. Thereafter, defendant engaged in the business of collections and credit reporting in and out of Cumberland county and frankly insists that he intends to continue so to do unless restrained. Complainant seeks an injunction to restrain defendant from engaging in "the business of credit reporting and collections" in the counties of Cape May, Cumberland and Atlantic for the three-year period mentioned in the contract aforesaid, but does not seek restraint against defendant's engaging in "public accounting" or "allied lines," and so announced at the final hearing.
The first inescapable conclusion of fact must be that if defendant is permitted to violate his negative covenant as contained in the agreement of May, 1936, aforesaid he will take advantage of his knowledge of complainant's business methods and solicit its subscribers, both actual and potential, in the restricted territory, and that this knowledge was gained by, from and through his employment by complainant, and it follows that if he is permitted so to do "irreparable injury will ensue." IdealLaundry Co. v. Gugliemone, 107 N.J. Eq. 108 (at p. 114);151 Atl. Rep. 617.
The first point argued is that inasmuch as defendant did not sign the restraint agreement until sometime after his original employment there is no consideration therefor. I do not so find. The consideration was "my employment by you" and related to his continued employment. He continued to be employed, received his salary regularly and had the benefits of training, experience and promotion while employed by the complainant. He says he knew what he was signing and the effect of the negative covenant. He must have known that his continued employment was based on his having signed the agreement aforesaid.
It is next argued that the covenant is void by reason of its being unreasonable in the employments or business pursuits which it restrains.
It is conceded that complainant was not, and is not engaged in public accounting and as said before, is not seeking restraint as to that feature, nor is complainant endeavoring *Page 363 
to restrain under the "allied lines" feature of the covenant, but defendant says that because of the inclusion of these features the whole covenant falls as being unreasonable. Not so. If the restraint against "credit reporting and collections" is valid it may be enforced unless all the provisions, taken together, are dependent one upon the other. In the consideration of contracts in restraint of trade the public interest is intended to be guarded and if that interest may be cared for the parties are at liberty to contract, and while the contract in question attempts to restrain defendant from engaging in public accounting and allied lines, these provisions are in nowise dependent upon the provisions restraining against engaging in credit reporting and collections. Stewart v. Lehigh Valley Railroad Co.,38 N.J. Law 505 (at pp. 520, 521); Erie Railway Co. v. UnionLocomotive and Express Co., 35 N.J. Law 240; Trenton PotteriesCo. v. Oliphant, 56 N.J. Eq. 680; 39 Atl. Rep. 923;Fleckenstein Bros. Co. v. Fleckenstein, 76 N.J. Law 613;71 Atl. Rep. 265, (and particularly at p. 617), where the court said:
"Ordinarily it is a reasonable presumption that parties intend to make a valid contract; that in a case like the present they design to provide a restraint which will be reasonable, in their judgment, for the protection of the purchaser in the enjoyment of the subject of the purchase (Trenton Potteries Case, 517), and I see nothing in the language used by these parties which requires the conclusion that their intention was that unless the full measure of protection afforded to the plaintiff by the contract was capable of enforcement against the defendant, there should be no protection at all against competition by the latter. The construction of this contract which makes the description of the restricted area divisible is certainly a possible one, and it seems to me that when a vendor endeavors to steal from his vendee the business which he has sold, having in his pocket the moneys which were paid to him for it, courts should be diligent in the endeavor to find a way to prevent the consummation of so fraudulent a scheme. As was said by Lord Macnaghten inNordenfeldt v. Maxim, c., Co. (1894), App. Cas. 573, in speaking of a case like the present, it seems almost absurd to *Page 364 
talk of public policy in connection with such a case. It is a public scandal when the law is forced to uphold a dishonest act, and the public suffers no injury in being deprived of the privilege of dealing with a man who is carrying on his business in violation of his solemn engagement not to do so.
"The construction of the present contract, which makes the territory it embraces divisible, is, as I have said, a possible one. That being so, public policy, which is best subserved by the administration of justice, requires that it should be adopted."
And Cameron v. International Alliance of Theatrical StageEmployes, c., 119 N.J. Eq. 577 (at p. 589);183 Atl. Rep. 157, where the court said:
"While a stipulation imposing an unreasonable restraint of trade is illegal, and therefore unenforceable, it is the rule, well grounded in our jurisprudence, that, where a contract contains a promise in reasonable restraint of trade and one in unreasonable restraint, the former promise is enforceable, unless the entire agreement is part of a plan to obtain a monopoly obnoxious to the law."
In the Erie Railway Co. Case, supra (at p. 246), the court said:
"The stipulation alleged to have been broken was, that the apprentice would not carry on the business in which she was to be instructed, within `the space of half a mile' of the then dwelling-house of the plaintiff. There was also a further stipulation that she should not carry on this business within half a mile of any house into which the plaintiff might remove. The suit was for a breach of the former stipulation, and it was admitted that the latter one was void, as imposing an unreasonable restraint on trade, and it was urged that, by force of this illegal feature, the whole contract was void. But the court were unanimously of opinion that as the breach was assigned upon that part of the condition which was good in law, therefore if the other part, to which exception was taken, was against law, yet that would not hinder the recovery upon part of the condition which was legal. This judgment was afterwards affirmed by the twelve judges, on an appeal to parliament. 3 Bro. Parl. C.349." *Page 365 
It is argued that there is no particular method or secret of making collections or credit reporting. This might be true in the case of a collector going from door to door to collect a weekly milk bill, for instance, but this was not the nature of complainant's business, and the evidence warrants the conclusion that complainant did have methods of its own in conducting its various branches of this business with which all of its employes were instructed, both in its branch offices as well as in its main office in Atlantic City, where employes from its various branches were assembled from time to time and given instruction.
It is next argued that the contract is void as being unreasonable in geographic extent.
The law is too well settled to require citation that "contracts in partial restraint of trade — that is, those which restrain from pursuing a business within a defined area less than the whole country — will be enforced if the space of exclusion is no wider than is reasonably required for the protection of the covenantees in the enjoyment of the business to which the covenant relates, and not so large as to interfere with the interests of the public." Trenton Potteries Co. v. Oliphant,supra. And the law is also definitely established that "in ascertaining whether the exclusion is wider than is required for the protection of the covenantee, and therefore uselessly in restraint of trade, each case will be considered and determined on the facts attendant upon the particular transaction." TrentonPotteries Co. v. Oliphant, supra.
It is also equally well established that "the test to be applied in determining whether the restraint is reasonable or not, is to determine whether it is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public." Gordon Supply Co. v. Galuska, 113 N.J. Eq. 353;166 Atl. Rep. 700.
As heretofore noted, complainant is and has been doing business in the three counties mentioned for years and maintains its various branches in each county. It was to protect its business in these counties and each of them that the suggested contract restraining the defendant be signed by him. *Page 366 
He admits he seeks to violate it by doing the same kind of business in these counties as that done by complainant and says, with the exception of Cumberland and a small part of Atlantic and Cape May counties, he has made no personal contacts and that particularly in Atlantic City and Ocean City, both comprising the business centers of these counties, complainant is too well established to be hurt by any competition that defendant might offer, and that may be so, but complainant should not be expected to accept a hazard against defendant's contract, in view of the fact that the interests of the public will in nowise be harmed by preventing defendant from ignoring a contract voluntarily entered into.
It is argued that the contract is void as being unreasonable as to time. The answer is that the court does not so find, especially in view of the many reported cases of like character in which a greater time has been held reasonable.
The result is that the defendant will be restrained from engaging, either as employer, proprietor or employe, in the business of credit reporting or collections in the counties of Atlantic, Cape May and Cumberland for a period of three years from February 15th, 1939.
The restraint is not intended, of course, to prevent defendant from accepting employment in other lines of endeavor where, as an incident of his employment, he makes collections of accounts due his employer, and the decree must so provide.
Complainant is entitled to costs.