The defendant solicits an order striking out the bill of complaint. It is asserted to be apparent on the face of the bill that the complainant lacks a cause of action.
Summarily described, the bill charges that the complainant has been for many years engaged in the business of selling furs and other garments at No. 140 South Broad Street, in the City of Trenton, and that by means of an agreement in writing between the parties (which agreement is expressly made a part of the bill) dated July 1st, 1941, the complainant employed the defendant to serve as a salesman at its place of business from July 1st, 1941, until June 30th, 1942. The agreement embraces the following covenant:
"7. And it is further understood and agreed by the parties hereto, and in further consideration of the terms of this contract, and on consideration of One ($1.00) Dollar lawful money of the United States, in hand paid by the party of the first part to the party of the second part, receipt of which is hereby acknowledged, that should either party, for any reason, terminate the employment provisions of this contract, the party of the second part covenants and agrees to and with the party of the first part that he, the said party of the second part, shall not and will not engage himself either directly or indirectly in the fur, cloak, suit or ladies wearing apparel business for a period of three (3) years and within a radius of two (2) city squares or blocks from No. 140 South Broad Street, Trenton, New Jersey, after terminating his employment with the said party of the first part, whether the same be by disagreement or whether the same be at the termination of this agreement."
The bill moves onward to charge that the defendant pursued his employment under the terms of the agreement until August 1st, 1942, when he voluntarily discontinued his services for the complainant and has now accepted similar employment with Flemington Fur Company, a competitor of the complainant within the restricted area, at No. 137 South Broad Street in Trenton. The complainant prays that the defendant be enjoined from violating his covenant. *Page 526 
Assuredly, it is not manifest from the bill itself that the covenant has a greater amplitude than reasonably required to afford a fair protection in favor of the complainant, or that it is unreasonably restrictive of the rights and opportunities of the defendant, or that it is prejudicial to the public interests. Those are the primary factors to be considered in testing the validity and efficacy of such a covenant. A. Fink Sons v.Goldberg, 101 N.J. Eq. 644; 139 Atl. Rep. 408; Gordon SupplyCo. v. Galuska, 113 N.J. Eq. 353; 166 Atl. Rep. 700; AutomobileClub of Southern New Jersey v. Zubrin, 127 N.J. Eq. 202;12 Atl. Rep. 2d 369. Ostensibly the restraint seems to be reasonable as to time and space, and the covenant is alleged to be ancillary to the contract of employment.
The solicitor of the defendant lavishes attention upon paragraph 8 of the agreement, of which the following is a transcription:
"8. It is also understood and agreed by the parties hereto that both parties agree not to institute suit either at law or equity against each other by reason of the termination of the employment at any time after two (2) months from the date of this agreement."
The ascertainment of the expressed intention of the parties is the prime object of the interpretation of all written contracts.Corn Exchange Bank v. Taubel, 113 N.J. Law 605;175 Atl. Rep. 55.
Equally conspicuous in the agreement is paragraph 6, which reads:
"6. It is further understood and agreed by the parties hereto, that at any time after two (2) months from the date of this agreement, either party may terminate the term of employment under this agreement, for any reason, it being understood that the party of the first part may discharge or release the party of the second from that part of the contract pertaining to the employment, and the party of the second part may terminate his said employment provided that, nothing herein contained shall void, abrogate or annul the restrictive covenant entered into by the party of the second part and set out in paragraph 7 of this agreement."
The intention of the parties must be harvested from the context of the agreement in its entirety. It seems evident *Page 527 
that the employment of the defendant and his acceptance of the engagement were regarded by the parties as somewhat experimental. They agreed that after the lapse of two months, either party should be privileged to terminate the agreement, "for any reason," that is, "for whatever reason," and that the "reason" or cause for the termination of the employment should not be the subject-matter of litigation. They expressly agreed that the rescission of the agreement should not "void, abrogate or annul" the restrictive covenant contained in paragraph 7 of the agreement. Whether an agreement by contracting parties to forego their right to resort to the courts is contrary to public policy, is a question which does not here arise.
The equity of the complainant's cause is distinct in the bill. The defendant was not discharged. He himself dissolved the employment. He achieved a gainful occupation in the business of the complainant for more than a year, pursuant to the terms of the agreement. He now seeks to devote his salesmanship to the advantage of a competitor of the complainant at a location which I infer from the street number is in the immediate vicinity of the place of business of his former employer. Viewed solely in the light of the factual statements of the bill, the defendant is undertaking to accomplish a flagrant violation of his promise.
An order will be advised denying the motion, with costs. *Page 528