[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 471 
Innumerable judicial decisions concerning contracts in restraint of trade have dropped into the reports since Dier'sCase in 1414, Y.B. 2 Hen. V. 5 and the more highly regarded opinion in 1711 of Mitchel v. Reynolds, 1 P. Wms. 181, 24Eng. Reprint 347. Such contracts continue to comprise a class in which the elements of validity and enforceability are to be determined more in recognition of considerations of public policy than in furtherance of the intended contractual obligations of the parties. *Page 472 
The apprehension that the suppression of competition in trade beyond a certain scope and degree would become inimical to the public welfare is still influential, and so the reasonableness of the restriction in point of time and territory surmounts in importance the restraint voluntarily agreed upon by the contracting parties. Such is not in accord with the notion expressed by the plaintiff Kovacs at the trial.
Ancillary to the sale by the defendant of his business to the plaintiffs on February 13, 1948, the defendant agreed to let the premises in which the business was being conducted to the plaintiffs for the term of five years with an option to renew the tenancy for an additional five years, and he also "covenanted and agreed that during the term of this lease or any renewal thereof that said Seller and the present owners of said premises shall not engage directly or indirectly or concern themselves in carrying on the same business as is about to be conveyed either as principal, agent or servants within the Borough of South River, New Jersey, and within a radius of ten (10) miles from said tavern at any time during the term of this lease or any renewal thereof, provided seller may operate a package store so called altho' not in South River, N.J. or a radius of four miles of South River."
The defendant does not attempt to controvert his voluntary assent to all of the terms of the contract of sale, and he feels that in the circumstances disclosed by the evidence he is substantially and adequately respecting the essential object of the restrictive covenant.
The issue, basically one of fact, is whether the territory embraced by the covenant is more generous in area than is reasonably required for the protection of the good will of the business purchased by the plaintiffs. There is no table of measurements of geographical boundaries to be universally applied. The factual question of that nature must be resolved from a circumspect consideration of the particular circumstances of each case.
The business acquired by the plaintiffs may well be succinctly described as that of a typical urban saloon situate on Reid Street in a populated section of South River. The *Page 473 
business had only been previously conducted for a period of nine months.
In the fall of 1948 the defendant pondered the project of establishing some remotely suburban recreation park including a dance hall, picnic grounds, and a field for baseball and other games for the entertainment and enjoyment of his patrons. He acquired a site of eleven acres which all admit is located "out in the woods," upon which he has erected a building 40 x 60 feet in size with an adjacent picnic ground and athletic field. As one might well conjecture, he obtained a plenary retail consumption license. New Year's Eve was the opening night.
The predominant characteristics of the defendant's business resemble those of the so-called night club. An orchestra provides music for dancing on Friday, Saturday, and Sunday evenings. Barbecues are occasionally held on the grounds. The plaintiffs offer their patrons only the "cup that cheers." The similarity of the respective business enterprises consists in the sale of intoxicating beverages. The differences in the patronage at such resorts are normally ascribable to the divergent propensities of customers and frequently to the contents of their pocketbooks.
It is said that the place of business of the defendant in Monroe Township is within "a radius of ten miles" from the plaintiffs' tavern "as the crow flies." The adage is entitled to its proverbial dignity, but actually a crow is not noted for either its constancy or integrity. To that feathered vertebrate corn fields have irresistible allurements.
I shall therefore repose more confidence in the testimony of the civil engineer who informs me that the defendant's property is accessible from the plaintiffs' place of business in South River by means of either of two public roads. Over the one through Spotswood and East Brunswick Township, the distance is 8.7 miles; over the other through Jamesburg, South Brunswick and East Brunswick Townships, it is 11.1 miles.
Recognizing those dissimilar characteristics of the two business engagements, the contrast of their respective locations, *Page 474 
the relatively inconsequential shortage in the actual distance of their separation from that specified in the restrictive covenant, and the fact that there are 39 retail licensees in the Borough of South River itself, I am unable to conclude that a precise and rigid enforcement of the covenant is equitably required to protect the plaintiffs from material injury. Oppressive restraint upon a defendant which in the peculiar conditions will be of little or no benefit to the plaintiff is not favored by a court of equity.
Judgment for the defendant.