42 N.J. Super. 122 (1956)
125 A.2d 872
CHAS. S. WOOD & CO., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WILLIAM J. KANE AND SCHAEDEL & BEYER, INC., A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1956.
Decided October 11, 1956.
*124 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Saul Tischler argued the cause for appellant.
Mr. Alfred J. Peer argued the cause for respondent Schaedel & Beyer, Inc.
Mr. William D. Dougherty argued the cause for respondent William J. Kane.
The opinion of the court was delivered by JAYNE, J.A.D.
Neither modern public policy nor the judicial decisions of recent years have proscribed contracts in restraint of trade between employer and employee where the restraint is reasonably necessary for the protection of the business of the employer and not unreasonably restrictive in point of time or territory upon the normal rights of the employee. Silbros, Inc., v. Solomon, 139 N.J. Eq. 528 (Ch. 1947), wherein the citations of many of our pertinent decisions are assembled, to which may now be added Pilgrim Coat, Apron & Linen Service, Inc. v. Krzywulak, 141 N.J. Eq. 212 (Ch. 1948); A. Hollander & Son, Inc., v. Imperial Fur Blending Corp., 2 N.J. 235 (1949); Irving Investment Corp. v. Gordon, 3 N.J. 217 (1949); Nisonoff v. Cerebe, 1 N.J. Super. 577 (Ch. Div. 1948); Kern v. Szobovitz, 2 N.J. Super. 401 (Ch. Div. 1949); Sonotone Corp. v. Hall, 2 N.J. Super. 482 (Ch. Div. 1949); Kovacs v. Kaczorowski, 3 N.J. Super. 469 (Ch. Div. 1949); Schlossbach v. Francis-Smith, 3 N.J. Super. 368 (Ch. Div. 1949); Sonotone Corp. v. Ellis, 4 N.J. Super. 331 (App. Div. 1949); Art Wire & Stamping Co. v. Johnson, 7 N.J. Super. 173 (App. Div. 1950); R.L. Guttridge, Inc., v. Wean, 8 N.J. Super. 450 (Ch. Div. 1950).
*125 Moreover, it may be said that the decisional reports in general, the encyclopedic works, text-books and annotations are alive with cases implicating the propriety and fitness of covenants in restraint of trade between employer and employee and between a vendor and vendee of a business and its good will. 17 C.J.S., Contracts, § 254, p. 636; 43 C.J.S., Injunctions, § 84(c), pp. 571, 574; 35 Am. Jur., Master and Servant, § 99, p. 528; 36 Am. Jur., Monopolies, Combinations, etc., § 79, pp. 555, 556; 5 Williston, Contracts (rev. ed 1937), p. 4606 et seq., § 1643; 6 Corbin, Contracts, p. 514 et seq., § 1394 (1951); 2 Restatement, Contracts, § 516(f); 9 A.L.R. 1456, supplemented in 20 A.L.R. 861; 29 A.L.R. 1331; 52 A.L.R. 1362; 67 A.L.R. 1002; 98 A.L.R. 963; 152 A.L.R. 415; 41 A.L.R.2d 15; 43 A.L.R.2d 94; 46 A.L.R.2d 119.
The paramount factors to be considered in testing the validity and efficacy of such a covenant are whether the covenant ancillary to the contract of employment has a greater amplitude than reasonably required to afford a fair protection in favor of the employer, or whether it is unreasonably restrictive of the rights and opportunities of the employee, or whether it is oppugnant or prejudicial to the public interests. Original New York Furriers Co. v. Williams, 133 N.J. Eq. 524 (Ch. 1943).
On May 18, 1953 the plaintiff and the defendant William Kane executed a contract of employment embracing the following covenant:
"The Employee agrees that he will not for a period of one year after the end of this Agreement, irrespective of the time, manner or cause of said termination, individually, directly or indirectly, either as principal, agent, employee, employer, stockholder, advisor, co-partner, or in any capacity whatever, solicit, supply, serve, engage or assist, be interested in or connected with any other person, firm or corporation, soliciting, supplying, furnishing or contracting to furnish acoustic and thermal insulating material or the application of acoustic and thermal insulating material within the States of New Jersey and New York."
By a memorandum in writing bearing date January 2, 1954, also signed by the plaintiff and the defendant Kane, *126 the latter's salary was increased, and except as thereby amended it was mutually agreed by the parties that the terms and provisions of the original agreement of employment of May 18, 1953 should remain in full force and effect until June 30, 1955. On April 12, 1955 the defendant Kane resigned and entered the employ of the defendant Schaedel & Beyer, Inc., a business competitor of the plaintiff.
On July 19, 1955 the plaintiff instituted the present action in the Chancery Division in quest of a judgment enjoining the defendants from the pursuit of an employment known by them to be hostile to the restrictive covenant hereinbefore quoted, and additionally for an accounting and for damages. The learned trial judge resolved that the covenant was itself invalid and unenforceable, construing it to be unlimited as to territorial area. For that basic reason all of the plaintiff's alleged claims for equitable relief which were necessarily dependent upon the validity of the covenant were dismissed upon motion of counsel for the defendants at the conclusion of the introduction of the plaintiff's evidence. There are consequently no findings of fact. We shall assume that the trial judge even in the Chancery Division in the determination of the motion under present practice accepted the factual setting erected by the plaintiff's evidence as true. Cauco v. Galante, 6 N.J. 128, 132 (1951); Kolberg v. Kolberg, 16 N.J. Super. 413, 415 (App. Div. 1951).
So the question presented to us on appeal is a narrow one. Is the covenant per se so arbitrary and unreasonable in its literally acceptable composition as to be invalid and hence equitably unenforceable in whole or in part in all plausible conditions? The judicial function exercised by the trial judge in the present suit seems to have been confined to a construction of the covenant itself, in which task he was particularly influenced by the syntactical relation between its words and phrases and by the circumstance that it had been prepared by the plaintiff. Moses v. Edward H. Ellis, Inc., 4 N.J. 315 (1950). Infinite, indeed, are the legal authorities relative to the judicial construction of contracts.
*127 In achieving an acquaintance with the established rules governing the construction, or the slightly distinguishable interpretation, of written contracts, one consults the familiar decision delivered by Mr. Justice Heher for the Court of Errors and Appeals in Corn Exchange Nat. Bank & Trust Co., Philadelphia v. Taubel, reported in 113 N.J.L. 605, 608 et seq. (1934). It must be acknowledged that all of the conventional rules of construction and interpretation, together with their established variations and exceptions, must be accorded respectful attention proportionate to their applicability. Thus, the surrounding facts of the given case ordinarily indicate the destination of the ultimate decision of the mutually intended import discoverable in the language of the document; hence in the equitable consideration of cases of this nature the knowledge of factual customs and usages, the circumstances and manifestations of the parties prior to and contemporaneous with the composition of the written instrument, other than the oral explanations of the parties, normally becomes exceedingly helpful. Here the disclosure of all the facts appears to have been arrested by the premature dismissal of the plaintiff's action. Such has not been the traditional practice in courts of equity. See all and hear all of the competent and relevant information has been the habit in Chancery for centuries.
Whether a restraining covenant in such a category is equitable, fair, just and reasonably requisite in respect of time or territory or both in its relation to the parties thereto is essentially an inquiry of fact and not a naked matter of law. The presumption is that the parties who voluntarily engaged in the agreement regarded the limitational covenants as reasonably necessary. Kaufman v. Reubin, 103 N.J. Eq. 14, 16 (E. & A. 1928). It is assumed that they intended to make a valid contract. Artistic Porcelain Co. v. Boch, 76 N.J. Eq. 533 (Ch. 1909); Fleckenstein Bros. Co. v. Fleckenstein, 76 N.J.L. 613 (E. & A. 1908); Voices, Inc., v. Metal Tone Mfg. Co., Inc., 119 N.J. Eq. 324 (Ch. 1936), affirmed, 120 N.J. Eq. 618 (E. & A. 1936), certiorari denied 300 U.S. 656, 57 S.Ct. 433, 81 L.Ed. 866 *128 (1937); Credit Rating Service, Inc., v. Charlesworth, 126 N.J. Eq. 360, 363 (Ch. 1939); Sonotone Corp. v. Ellis, 4 N.J. Super. 331 (App. Div. 1949).
Moreover, an interpretation which renders the covenant fair and reasonable in its application to the circumstances of the given case will be preferred to one which results in its complete nullification. 3 Williston, Contracts 1785, § 620; Tunkel v. Filippone, 4 N.J. Super. 107 (App. Div. 1949).
Extensive territorial areas have been specified in such covenants. For illustrations see Wm. T. Wiegand Glass Co. v. Wiegand, 105 N.J. Eq. 434 (Ch. 1930), and Irvington Varnish & Insulator Co. v. VanNorde, 138 N.J. Eq. 99 (E. & A. 1946), in which the United States was therein enveloped; in Voices, Inc., v. Metal Tone Mfg. Co., supra, where the range embraces the United States or its territories; in A. Hollander & Son, Inc., v. Imperial Fur Blending Corp., supra, where the expanse included all the states east of the meridian passing through St. Louis, Missouri.
Assuredly the ascertainment and effectuation within the law of the intention of the parties in its relation to the manifest object to be contractually accomplished are the basic purposes to be served in the interpretation of written agreements. The parties are undoubtedly bound by the language they employed, but not necessarily by its grammatical conformity with linguistic science. The present covenant cannot be represented to be one obliging the defendant Kane to either work in his chosen occupation for the plaintiff or remain idle. Cf. Taylor Iron and Steel Co. v. Nichols, 73 N.J. Eq. 684 (E. & A. 1908). Nor should it be judicially assumed in the absence of proof that every individual, firm, or corporation in such business solicits, supplies, furnishes or contracts to provide acoustic and thermal material and installation within the States of New Jersey and New York.
Had the diction of the covenant been prepared to read, "The Employee agrees that he will not (within the States of New Jersey and New York) for a period of one year *129 * * * solicit, supply, serve * * *," its operation as a fair protection of the existing business of the employer and its reaction upon the public interests would certainly be determinable only by a consultation with the factual circumstances.
We cannot premise that a full disclosure of the illuminating facts would not have persuasively indicated that the aforementioned transposition of words truly expressed the actually intended import of the covenant.
We therefore conclude that the determination of the trial judge that the covenant was on its face patently void and as a matter of law completely unenforceable was prejudicially erroneous. Hence, the involuntary dismissal of the action cannot be sustained.
The cause is remanded to the Chancery Division wherein, in further proceedings not inconsistent with this opinion, competent evidence, if available, may be adduced relative to the mutually intended import of the covenant and to its fairness and reasonableness within the essential elements hereinbefore stated.