151 N.J. Super. 344 (1977)
376 A.2d 1277
PETER HOGAN, PLAINTIFF,
v.
BERGEN BRUNSWIG CORPORATION, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 27, 1977.
Mr. Richard D. Schibell for plaintiff (Messrs. Shebell & Schibell, attorneys).
Mr. Murray J. Laulicht, for defendant (Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher, attorneys).
YACCARINO, J.S.C.
The issue presented by the facts of this case is whether continued employment constitutes consideration sufficient to support an employee's restrictive covenant not to engage in post-employment solicitation of customers. Although the court concludes herein that a number of reported decisions require an answer in the negative, the law of this State has been stated to be the contrary by secondary authority, mandating judicial exposition of the issue.
*345 The facts, as revealed by the pleadings and affidavits, may be summarized as follows. In his verified complaint and affidavit plaintiff Hogan states that prior to February 11, 1977 he had been employed by Allied Churgin and Sadkin Laboratories, a subsidiary of defendant corporation, for approximately 27 years. Plaintiff states, and has submitted in support thereof the affidavit of Martin J. Altman, a former partner of Allied Churgin, that sometime in 1968 he was offered and agreed to accept a contract of employment as sales representative for a term of life, barring conduct constituting gross malfeasance. Admittedly, the terms of the alleged contract were not reduced to writing.
Plaintiff alleges that on February 11, 1977, and in breach of the terms of the alleged contract, he was summarily dismissed from his employment without cause. Plaintiff further alleges that subsequent to his termination defendant corporation wrongfully undertook to enforce the terms of a restrictive covenant allegedly signed by him on May 9, 1974. The relevant portions of that agreement are as follows:
4. An Employee shall hold in confidence and not disclose to any third party, except to authorized persons in the course of his work for the Company and at any and all times thereafter, any and all information of a confidential nature not generally available to the public which is delivered to the Employee in the course of his work for the Company, or which he obtained in connection with his employment with the Company, relating to the business or operations of the Company, or its clients. Confidential information of this type includes but is not limited to customer lists, scientific or technical information, designs, data processes, procedures, formulas or improvements thereto.

* * * * * * * *
7. For a period of twelve months following the termination of an Employee's employment with the Company, he shall not directly or indirectly solicit any customer of the Company for whom he performed services while employed by the Company or which he solicited on behalf of the Company.
In support of his contention that defendant corporation should be preliminarily enjoined from enforcing the foregoing provisions, plaintiff relies upon a number of arguments. *346 First, plaintiff states that he never signed the alleged agreement and that even if he did, his signature was the product of duress in that he was not permitted to review the agreement and to seek the advice of counsel. Second, plaintiff argues that the agreement is unenforceable for failure of consideration by virtue of the fact that he was already an employee for life and had nothing to gain by signing the agreement and, conversely, that defendant corporation suffered no legal detriment. Third, plaintiff contends that defendant corporation should be estopped from enforcing the agreement by reason of its unclean hands caused by the summary and wrongful discharge. Fourth, plaintiff argues that the agreement is unenforceable because it is unreasonable. In this regard, plaintiff points out that the agreement does not contain a territorial restriction on its face. In addition, plaintiff argues that enforcement of the agreement would work an undue hardship upon him since his only training for employment is in the field of dental products sales.
Defendant's opposition to the issuance of restraints is equally comprehensive. Through the affidavits of Adrian Benjamin and Walter Churgin, both managers of Allied Churgin, defendant expressly denies, and argues to be frivolous, plaintiff's allegation that he was offered a contract of employment for life. In his affidavit Benjamin relies largely upon various financial statements and reports issued during a corporate merger, all of which belie the existence of the alleged agreement. Churgin, one of the persons who was alleged to have authorized the lifetime contract, explicitly denies that any such contract was ever discussed.
Contrary to plaintiff's allegation that he was dismissed summarily and without cause, defendant relies upon the foregoing affidavits plus the affidavit of Edward Fisher, sales manager of Allied Churgin. In sum, those affiants state that the decision to terminate plaintiff's employment was made after much consideration and long after plaintiff was advised that his sales efforts were considered to be unsatisfactory; that plaintiff had been formally placed on probation for the *347 four months prior to termination; that plaintiff did not demonstrate sufficient initiative in securing new accounts, being content to collect the substantial commissions paid on his bread-and-butter accounts, and that he falsified a certain call report while he was on probation.
In addition, defendant states that not only did plaintiff execute the acknowledgment attached to the restrictive covenant, but that his allegation of duress is a sham. The restrictive covenant involved was not directed to plaintiff individually. Rather, the covenant was contained in one of three policy statements forwarded to all employees by letter dated October 25, 1973. That letter advised employees to read the statements personally, to understand them thoroughly, and to execute and return the acknowledgment provided. According to the affidavit of Irwin Korman, group vice-president of defendant corporation, plaintiff was one of several employees earning in excess of $15,000 a year who was recalcitrant in signing the acknowledgment. Korman met with each of these employees, the meeting with plaintiff taking place on May 9, 1974. Korman avers that on that date, more than seven months after the policy statements were originally circulated, plaintiff signed the acknowledgment in his presence and without voicing any objection thereto. It is to be noted that this meeting and signature apparently took place approximately 31 months before plaintiff was placed on probation and approximately 35 months prior to termination of his employment. Importantly, plaintiff was not given a written contract of employment, nor were any of the terms and conditions of his employment changed. No money changed hands upon execution of the agreement.
Finally, defendant argues that the restrictive covenant here in question is "mild and reasonable." Although there is no territorial restriction contained in the covenant  undoubtedly because the origin of the covenant was a general policy statement forwarded to all employees  defendant interprets the covenant to apply only to the two *348 counties, Essex and Union, serviced by plaintiff. Moreover, the prohibition against solicitation of customers ran for only 12 months, with eight months remaining thereon at the time of litigation. In addition, defendant points out that those customers located in Essex and Union Counties are among its best customers by reason of their close proximity to defendant's place of business. Many of these customers, defendant states, were pre-existing accounts which plaintiff was assigned to service. Such accounts constitute approximately 25% of defendant's sales volume; therefore, defendant argues that it has a legitimate business interest in protecting these customers until the newly assigned sales representative has a chance to develop a degree of personal rapport with such clients, an essential ingredient for successful sales in this field. Furthermore, defendant contends that its enforcement of the covenant will not unduly harm plaintiff. Only eight months remain in its viability and it applies to only two counties. In short, plaintiff may solicit customers in any other area of the State.
For preliminary purposes, the court notes that much of plaintiff's position is without merit. As the affidavits presently stand, the court would be hard pressed not to conclude that plaintiff's execution of the agreement was voluntary and that defendant believed that it had what it considered to be good cause to terminate plaintiff's employ. Moreover, the court has considered the reasonableness of the agreement for purposes of preliminary restraints under the tests espoused in Solari Industries, Inc. v. Malady, 55 N.J. 571 (1970), and Whitmyer Brothers, Inc. v. Doyle, 58 N.J. 25 (1971), and, quite frankly, would find it inappropriate to hold the agreement to be unreasonable at this stage of the litigation.
Be that as it may, the court is of the opinion that the restrictive covenant is absolutely null and void for lack of consideration. By the great weight of authority, case law in this jurisdiction requires that a restrictive covenant be based upon a good consideration. Those cases are legion which *349 state that a valid restrictive covenant must be ancillary to a contract of employment. It is the contract which constitutes the employer's consideration. E.g., A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 249 (1949); Ideal Laundry Co. v. Gugliemone, 107 N.J. Eq. 108, 110-11 (E. & A. 1930); Chas. S. Wood & Co. v. Kane, 42 N.J. Super. 122, 125 (App. Div. 1956); Sonotone Corp. v. Ellis, 4 N.J. Super. 331, 334 (App. Div. 1949); R.L. Guttridge, Inc. v. Wean, 8 N.J. Super. 450, 451 (Ch. Div. 1950); Pilgrim Coat, Apron and Linen Service, Inc. v. Krzywulak, 141 N.J. Eq. 212, 213-14 (Ch. 1948); Original New York Furriers Co. v. Williams, 133 N.J. Eq. 524, 526 (Ch. 1943). See also, e.g., Irving Investment Corp. v. Gordon, 3 N.J. 217, 224 (1949); Palumbo v. Piccioni, 89 N.J. Eq. 40, 42 (Ch. 1918).
Particular attention is drawn to three of the foregoing cases. The importance of the written contract is underscored in Original New York Furriers Co. v. Williams, supra, wherein Vice-Chancellor Jayne specifically noted that "the covenant [was] alleged to be ancillary to the contract of employment," thus treating such allegation as a condition precedent to a suit to enforce the negative covenant. Furthermore, in Ideal Laundry Co. v. Gugliemone, supra, the Court of Errors and Appeals, before addressing the reasonableness of the covenant, paused to note that "a contract of employment at a stated salary is a sufficient consideration" for a reasonalbe covenant. Finally, the facts of R.L. Guttridge, Inc. v. Wean, supra, are most appropriate for notation. In that case defendant employee had been originally hired by plaintiff without a written contract. When plaintiff recognized the wisdom of securing a restrictive covenant, he informed defendant that it was within his power to terminate his employment at will, but that his employment would be continued if he chose to accept a restrictive covenant. Defendant so agreed and the covenant was "embodied in and ancillary to [the] contract of employment."
*350 It may also be noted at this point that in 6A Corbin on Contracts, § 1394 (1962), a section often cited by our courts in restrictive covenant cases, the existence of a written contract is assumed. That section commences by stating that "[c]ases are innumerable in which a contract of employment contains a promise by the employee" not to compete.
Admittedly, the court has uncovered in its research two cases which may be read to stand for the proposition that continued employment in and of itself is a sufficient consideration to support a restrictive covenant. In fact, one of the cases, Credit Rating Service, Inc. v. Charlesworth, 126 N.J. Eq. 360 (Ch. 1939), has been so cited in an annotation specifically addressing the issue in 51 A.L.R.3d at 837. Based upon a close scrutiny of the facts of that case, and in light of the great weight of authority discussed above, the court disagrees with citation of the case for that proposition.
In Credit Rating Service, Inc. v. Charlesworth, supra, the learned vice-chancellor does appear to state  albeit in only one paragraph and without citation of authority  that continued employment does constitute consideration. Having carefully scrutinized that opinion, the court notes that there is no clear indication in the statement of facts whether an employment contract was signed. There, defendant had been hired originally for a probationary period and two months later signed the negative agreement. It is to be noted that in the opinion the court set forth only a portion of the agreement, that is, the negative covenant, leaving for conjecture all of the terms and conditions contained in the agreement. Moreover, the covenant commences by stating that it is given in partial consideration of employment. Thus, it would appear to this court that an employment contract had in fact been entered into, presenting a situation similar to that found in R.L. Guttridge, Inc. v. Wean, supra. Of course, since the Credit Rating Service decision was rendered by the former Court of Chancery, the opinion expressed in that case is not binding upon this court. *351 E.g., Wolf v. Home Ins. Co., 100 N.J. Super. 27, 35 (L. Div.), aff'd o.b., 103 N.J. Super. 357 (App. Div. 1968).
Second is the case of Vander May v. Schoone-Jongen, 128 N.J. Eq. 336 (Ch. 1940), aff'd o.b., 130 N.J. Eq. 227 (E. & A. 1941). Although the Vander May decision was affirmed by the Court of Errors and Appeals on facts which fail to disclose the execution of an employment contract, the issue of consideration was not raised. Opinions of appellate courts are binding only where the issue involved has been specifically decided. Caldwell v. Rochelle Tp. Park, 135 N.J. Super. 66, 76 (Law Div. 1975). Moreover, like Credit Rating Service, Inc. v. Charlesworth, supra, the Vander May case has never been cited by any of the courts of this State to stand for the proposition that continued employment, without more, is a valid consideration or, conversely, that a restrictive covenant, without the execution of a contract of employment or other consideration, is enforceable by the employer.
Certain other New Jersey cases have, although not necessary to the facts in this case, adopted the proposition of law found in the Restatement, Contracts, § 515(e) (1932), that a restraint of trade is unreasonable if it "is based on a promise to refrain from competition and is not ancillary either to * * * an existing employment or contract of employment." E.g., Heuer v. Rubin, 1 N.J. 251, 256 (1949); Glantz v. Willow Supply Co., 139 N.J. Eq. 523, 526 (Ch. 1947); Bond Electric Corp. v. Keller, 113 N.J. Eq. 195 (Ch. 1933). However, reference to Restatement Contracts 2d, §§ 329, 330 (Tent. Draft No. 12, 1977) provides the rationale underlying this seemingly expansive proposition of law. There it is noted that "[a] restraint may be ancillary to a relationship although, as in the case of an employment at will, no contract of employment is involved." Id. § 330, comment (g) at 120. This statement must be read to be qualified by the view that "[i]n the case of an ongoing transaction or relationship, * * * it is enough if *352 the promise is made before its termination, as long as it is supported by consideration and meets the other requirements of enforceability." Id. § 329, comment (b) at 108. See also, Blake, "Employee Agreements Not To Compete," 73 Harv. L. Rev. 625, 625, n. 1 (1960) ("Postemployment restraints may be found either in a covenant in the actual contract of employment or in a separate contract for which the supporting consideration is at least in part the continuing employment  emphasis supplied.) Thus, it must be concluded that where the employment relationship already exists, a restrictive covenant must be supported by a contract of employment or some other form of consideration. Under the facts of this case, no consideration passed to plaintiff.
For the foregoing reasons the court holds as a matter of law that the instant restrictive covenant prohibiting post-employment solicitation of customers is void and unenforceable for want of consideration. Plaintiff's application for a permanent injunction prohibiting enforcement of the negative covenant by defendant corporation will be granted. The remaining issues raised by plaintiff are to proceed in the normal course.